**UNITED STATES of America, Plaintiff,**

v.

**Charles HILL and Ceamon Hill d/b/a Hill Construction Company, Defendants and Third-Party Plaintiffs,**

v.

**AMERICAN INTERNATIONAL ENERGIES, INC., and L. D. Rowlette, Third-Party Defendants.**

**No. Civ.–1–81–50.**

United States District Court, E. D. Tennessee, S. D.

Jan. 12, 1982.

811

John C. Cook, Asst. U. S. Atty., John H. Cary, U. S. Atty., Chattanooga, Tenn., for plaintiff.

Greer, Smith & Condra, Dunlap, Tenn., for defendants & third-party plaintiffs.

Schwartz & Thompson, Knoxville, Tenn., for third-party defendants.

## MEMORANDUM

FRANK W. WILSON, Chief Judge.

This is a civil action brought on behalf of the United States of America at the request of the Secretary of the Interior pursuant to 30 U.S.C. § 1268(d) of the Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. §§ 1201 *et seq.*, seeking to recover civil penalties assessed against the defendants, Charles Hill and Ceamon Hill d/b/a Hill Construction Company, a partnership. Jurisdiction is asserted pursuant to 28 U.S.C. §§ 1345 and 1355. The lawsuit is presently before the Court upon cross motions for summary judgment supported by affidavits, and, a motion submitted on behalf of third-party defendant American International Energies, Inc. ("A.I.E."), seeking to set aside a default entered by the Clerk of the Court against that defendant upon September 11, 1981. The motion to set aside default is supported by the affidavit of the attorney for A.I.E.

From the entire record before the Court, the following facts appear to be undisputed.

Defendants Charles Hill and Ceamon Hill operate a business as a partnership known as "Hill Construction Company." (Hill Affidavit) On or about November 8, 1977, Charles and Ceamon Hill executed a lease agreement with R. D. Roberson, Jr. in which Mr. Roberson conveyed the right to remove coal by strip mining and underground mining from a tract of land owned by him in Bledsoe County, Tennessee. On or about June 10, 1978, Mr. L. D. Rowlette, who is alleged to be a citizen and resident of Rhea County, Tennessee, entered into an agreement with Charles and Ceamon Hill to purchase all their right, title and interest in the Roberson tract of land. Mr. Rowlette is named as a third-party defendant, but the court file reflects that he has not yet been served with process, nor is he otherwise before the Court. As related in the affidavit of Ceamon Hill, Mr. Rowlette failed to carry out all the terms of the purchase agreement, and a subsequent sublease agreement was arranged under date of October 19, 1978, whereby third-party defendant A.I.E. subleased the property from the Hill partnership. A.I.E. was required to pay to Hill Construction Company ten (10¢) cents per ton for the coal removed and to also pay Twelve Thousand ($12,000.00) Dollars in satisfaction of Rowlette's obligation. The mining operation in Bledsoe County was conducted under State Permit No. 78–321, which had been issued in the name of Hill Construction Company.

The specific facts upon which the United States as plaintiff bases its three-count complaint are set forth in the affidavit of Bruce Boyens, Office of Surface Mining Assistant Regional Director for Inspection and Enforcement, Region II. The affidavit reflects the following series of events relevant to Count One of the complaint. Upon June 14, 1979 Notice of Violation 79–II–25–42 was issued pursuant to 30 U.S.C. § 1271(a)(3) to Hill Construction Company as permittee for nine violations of the Act and its regulations. Service of the notice was by certified mail, return receipt requested, under date of June 15, 1979, it

being noted on the Violation Notice that the mine site was abandoned. (Boyens' Affidavit, Ex. A). The date set for abatement of those violations requiring abatement was July 5, 1979. Upon July 13, 1979 a Notice of Proposed Assessment of civil penalty was issued informing the defendant Company that a proposed penalty in the total amount of $13,660.00 had been assessed for the nine violations (Ex. B). A cover letter accompanied the Notice of Proposed Assessment setting forth alternatives available to the permittee. The letter stated first that the penalty would become final and payable within 30 days unless a conference or hearing was requested. To obtain a conference which would not require the prepayment of any penalty, a written request was required within 15 days. To be entitled to a hearing the letter required the operator to submit a petition within 30 days accompanied by a check or money order in the amount of the proposed penalty (Ex. C). Hill Construction Company having requested neither form of administrative review, a Final Order of Civil Penalty Assessment was issued under date of September 14, 1979 (Ex. D). The Final Order warned that failure to remit the penalty would cause the matter to be sent to the Department of Justice for collection. A further Final Demand Letter was sent under date of November 28, 1979 requesting payment within 15 days to avoid collection proceedings (Ex. E).

The second count of the government's complaint arises from the issuance of Cessation Order # 200236 pursuant to Section 521(a) of the Act, 30 U.S.C. § 1271(a)(2), served by mail under date of June 15, 1979 (Ex. F).

The Cessation Order sought the discontinuance of all active mining due to mining outside the permitted area. The order further sought the reclamation of all "off permit disturbance" by July 5, 1979. A Notice of Proposed Assessment of Civil Penalty for a single violation in the amount of $3,300.00 was mailed under date of July 13, 1979, accompanied by a cover letter explaining the finality of the proposed assessment as explained above with regard to count one

(Ex. G & H). Hill Construction Company requested neither an informal conference nor a formal hearing within the time prescribed. Consequently, upon September 14, 1979 a Final Order of Civil Penalty Assessment was issued setting the penalty amount at $3,300.00 (Ex. I). Upon November 28, 1979, a Final Demand Letter was mailed to Hill Construction Company stating that the penalty was overdue and that collection proceedings would be instituted within 15 days if the penalty remained unpaid (Ex. J).

The third count of the complaint relates to Notice of Violation 80–2–25–5 issued pursuant to 30 U.S.C. § 1271(a)(3) to Hill Construction Company under date of February 4, 1980 (Ex. K). The notice cited two violations of the Act and the regulations concerning refill and re-vegetation of the mine site. Dates for abatement of the violations were set and disregarded. Consequently, a Notice of Proposed Assessment in the total amount of $4,700.00 was mailed with an explanatory cover letter upon March 28, 1980 (Ex. L & M). The defendant did not appeal or request a hearing or conference. Thus, a final order of assessment and a Final Demand Letter were sent during July 1980 (Ex. N & O).

■ Having set forth the above administrative history of the case, the Court turns to the motion to set aside entry of default submitted on behalf of third-party defendant A.I.E. Defendant Hill Construction Company having filed a third-party complaint naming A.I.E. as third-party defendant upon May 26, 1981 and no response having been received, the Clerk of the Court upon motion entered a default against A.I.E. upon September 11, 1981. As the basis for its motion to set aside entry of default, defendant A.I.E. alleges inadvertence and excusable neglect. The motion is accompanied by a proposed answer. In an affidavit, that party's attorney has stated that the president of A.I.E. is the only individual with personal knowledge of the case and that he had been out of state most of the time after the service of the third-party complaint, thereby delaying preparation of an answer. Good cause hav-

ing been shown, the entry of default will be set aside and the proposed answer of A.I.E. accepted. Rule 55(c), F.R.Civ.P.

Turning to the cross motions for summary judgment, the government contends that the defendant's failure to invoke any of the available administrative remedies and particularly the defendant's failure to abide by the prepayment provisions of 30 U.S.C. § 1268(c) "result[s] in a waiver of all legal rights to contest the violation or the amount of the penalty," thereby entitling the government to summary judgment. In its counter motion for summary judgment the defendant asserts that the Act violates rights secured to the defendant by the Fifth Amendment to the United States Constitution. Specifically, it is argued that the Act violates the defendant's rights to equal protection and procedural due process, and is further violative of the prohibition against the taking of private property without just compensation.

■ Examining first the equal protection argument, the defendant contends that the Act is constitutionally infirm in that it regulates a class of persons, that is coal mine operators, while exempting from regulation other types of mining operations. The defendant further urges that there can be no rational basis for such a classification. In *Hodel v. Indiana,* 452 U.S. 314, 331, 101 S.Ct. 2376, 2386, 69 L.Ed.2d 40, 55 (1981), the Supreme Court disposed of an equal protection argument concerning the "prime farmland" provisions of the Act in the following manner:

"... Social and economic legislation like the Surface Mining Act that does not employ suspect classifications or impinge on fundamental rights must be upheld against equal protection attack when the legislative means are rationally related to a legitimate governmental purpose.... Moreover, such legislation carries with it a presumption of rationality that can only be overcome by a clear showing of arbitrariness and irrationality.... As the Court explained in *Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939 [943], 59 L.Ed.2d 171 (1979), social and economic legislation

is valid unless 'the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [a court] can only conclude that the legislature's actions were irrational.' This is a heavy burden, and appellees have not carried it." [case citations omitted]

The Supreme Court also reviewed the extensive legislative consideration of the Act in determining that Congress had a rational basis for concluding that surface coal mining has substantial effects on interstate commerce. *Hodel v. Virginia Surface Mining and Reclamation Association,* 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981). The House Report prepared in conjunction with the Surface Mining Act states in part as follows:

> "Surface mining of minerals other than coal also present environmental issues. The committee found, however, that the numerous distinctions between the mining technologies and associated environmental problems of coal surface mining as opposed to surface mining of such minerals as copper, iron and molybdenum militated against inclusion of all minerals in a single bill." H.R.Rep.No. 95–218, 95th Cong., 1st. Sess. 85 reprinted in 2 U.S.Code Cong. & Ad.News 593, 621 (1977).

Based upon the foregoing, the Court cannot say that the Congress was without a rational basis for regulating surface coal mine operators while not similarly regulating other types of surface mining operations.

■ The defendant next argues that 30 U.S.C. § 1268(c) violates the defendant's rights to procedural due process of law. That subsection provides in relevant part as follows:

> "Upon the issuance of a notice or order charging that a violation of the Act has occurred, the Secretary shall inform the operator within thirty days of the proposed amount of said penalty. The person charged with the penalty shall then have thirty days to pay the proposed penalty in full or, if the person wishes to contest either the amount of the penalty or the fact of the violation, forward the proposed amount to the Secretary for placement in an escrow account.... Failure to forward the money to the Secretary within thirty days shall result in a waiver of all legal rights to contest the violation or the amount of the penalty."

The defendant submits that the requirement of the prepayment of the penalty as a condition for a hearing coupled with an automatic waiver of all legal rights, cannot withstand judicial scrutiny in terms of procedural due process. The government on the other hand urges the Court to examine this subsection in light of the extensive procedural safeguards provided by the various levels of administrative review available before resorting to Section 1268(c). This review procedure is set forth in the plaintiff's brief which the Court finds appropriate to quote at length:

> "The procedures followed by the Secretary in assessing civil penalties, and the administrative and judicial appeal rights afforded mine operators, are set forth in 30 U.S.C. §§ 1268, 1275–76; 30 C.F.R. §§ 723.1 *et seq.;* and 43 C.F.R. §§ 4.1100 *et seq.* These procedures and appeal rights become applicable whenever a mine operator or permittee is issued a notice of violation or a cessation order under 30 U.S.C. § 1271(a).
>
> "I. Within ten days of service of a notice or order, the permittee may submit written information concerning the violation(s) to the Office of Surface Mining Assessment Office. Any such information must be considered by the Assessment Office in determining whether to assess a civil penalty and how large a penalty to assess. 30 C.F.R. § 723.16(a). Within 30 days of the issuance of the notice or order, the Assessment Office must inform the permittee of its decision to assess a penalty and must serve on the permittee a copy of the proposed assessment. 30 U.S.C. § 1268(c); 30 C.F.R. § 723.16(b).
>
> "II. If the notice or order requires the cessation of mining,[3] an informal public hearing must be held, upon the request of

the permittee, within 30 days of service of the citation. 30 U.S.C. § 1271(a)(5); 30 C.F.R. § 722.15. The hearing is conducted by a supervisory OSM employee, and the permittee may request that the hearing be held on the mine site. The hearing officer must issue his decision affirming, vacating, or modifying the citation within five business days. 30 C.F.R. § 722.15(f).

"III. Also within 30 days of the issuance of any notice or order, the permittee may apply for formal review of the citation under 30 U.S.C. § 1275; 43 C.F.R. §§ 4.1160 *et seq.* The permittee may receive a full, adversarial, evidentiary hearing before an impartial administrative law judge, who reviews the validity of the notice or order and has the power to vacate, affirm, or modify the citation. Temporary relief may be requested under 30 U.S.C. § 1275(c); 43 C.F.R. §§ 4.1260 *et seq.* Appeals to an administrative review board and judicial review rights are also available. 43 C.F.R. §§ 4.1271 *et seq.*; 30 U.S.C. § 1276(a)(2).

"IV. Within 15 days of receipt of a notice of proposed assessment of civil penalty, the permittee may request an informal conference to review the amount of the penalty. 30 C.F.R. § 723.17(a). The conference is conducted by an OSM employee who has had no previous connection with the case. Any information presented by the permittee at the conference must be considered by the Assessment Office in deciding whether to affirm, vacate, raise, or lower the penalty. 30 C.F.R. § 723.17(b).

"V. Finally, either within 15 days of the conclusion of the assessment conference (if one has been requested) or within 30 days of receipt of the notice of proposed assessment of civil penalty (if no conference has been requested), the permittee may apply for formal review of both the validity of the citation and the amount of the proposed penalty. 30 U.S.C. § 1268(c); 30 C.F.R. § 723.18; 43 C.F.R. §§ 4.1150 *et seq.* A full, adversarial, evidentiary hearing is held, as under remedy III described above. As a precondition of this final administrative remedy only, the permittee is required to pay the amount of the proposed penalty into an escrow account, 30 U.S.C. § 1268(c); 43 C.F.R. § 4.1152. If the permittee succeeds in having the penalty reduced or eliminated in this formal review process, any amount determined not to be owed must be refunded to the permittee with interest at the prevailing Department of Treasury rate. *Id.* Appeals to an administrative review board and judicial review are available here as well. 43 C.F.R. § 4.1270; 30 U.S.C. § 1276(a)(2)."

---

[3] As did Cessation Order 200236, issued to defendants in this case.

The first three remedies are described in the notice of violation or cessation order issued to the permittee, and the remaining two remedies are described in the cover letter sent with the notice of proposed assessment of civil penalty. The defendant does not contest the fact that such remedies were available to them and that such remedies were described in the appropriate mailings (Affidavit of Ceamon Hill). The only explanation offered is that the notices were forwarded to the sub-lessee and that the defendant had received assurances from an undisclosed source that the defendants need not concern themselves with the administrative notices. Although the parties have referred to an alleged hold-harmless agreement between Hill Construction Company and sub-lessee A.I.E., this arrangement is no defense in the present action. Having reviewed the administrative review available to the defendant, the Court is of the opinion that there can be no finding of an absence of procedural due process accorded this defendant.

■ The final argument advanced on behalf of the defendant is that the cessation order dated June 14, 1979 (Boyens' Affidavit, Ex. F), constitutes a taking of private property without just compensation in violation of the Fifth Amendment. Order No. 200236 was issued under § 1271(a)(2) and applied to only one of the total of twelve violations. In *Hodel v. Virginia Surface*

*Mining, supra,* a majority of the Supreme Court concluded that the Surface Mining Act easily survives a facial challenge on the Fifth Amendment "taking" question due to the "mere enactment" of the Act. 452 U.S. at 295–296, 101 S.Ct. at 2370–71, 69 L.Ed.2d at 28–29. However, the Court specifically reserved a ruling on the taking issue if presented with reference to particular parcels of land. 452 U.S. at 297 n. 40, 101 S.Ct. at 2371 n. 40, 69 L.Ed.2d at 29 n. 40. The defendant has argued that the order to cease operations "without a hearing and without providing for any compensation" is violative of the Fifth Amendment. The Supreme Court having stated that a hearing is not required before the issuance of a § 1271(a)(2) cessation order, 452 U.S. at 297–304, 101 S.Ct. at 2371–74, 69 L.Ed.2d at 30–33, this due process aspect of the defendant's argument is without merit. In the present case the order did not require permanent cessation of mining but instead required only the cessation of mining operations until such time as disturbances created outside the permit area could be corrected. Furthermore, there is no indication in the record that the defendant company availed itself of any of the opportunities provided by the Act for administrative relief. This failure to attempt any administrative resolution, (*See, Shawnee Coal Co. v. Andrus,* 661 F.2d 1083 (6th Cir. 1981)) coupled with the temporary nature of suspension of the defendant's mining permit leads the Court to conclude that any deprivation of property rights was not so severe as to constitute a Fifth Amendment taking. *See Pauley Petroleum, Inc. v. United States,* 591 F.2d 1308, 1327 (Ct. Claims 1979).

Accordingly, the Court having found in favor of the government on all legal theories advanced by defendant Hill Construction Company, an order will enter denying the counter-motion submitted by the defendants, sustaining the summary judgment motion submitted on behalf of the United States, and awarding a judgment in favor of the Government and against the defendants in the principal sum of $21,660.

This lawsuit will remain pending as to the third-party action. The motion of the third-party defendant, American International Energies, Inc., to set aside the default entered against it will be allowed. The trial of the third-party action now set for January 15, 1981 will be continued and the third-party action will be reset for trial upon Friday, March 19, 1982. Service of process having never been effected upon the third-party defendant, L. D. Rowlette, the third-party plaintiff will be allowed fifteen (15) days to show cause why the third-party action should not be dismissed as to the said L. D. Rowlette without prejudice and for lack of prosecution.