UNITED STATES of America, Plaintiff,

v.

THOMPSON BROTHERS COAL CO., INC., Defendant.

Civ. A. No. 81–945.

United States District Court,
W. D. Pennsylvania.

Feb. 26, 1982.

J. Alan Johnson, U. S. Atty., Joel B. Strauss, Asst. U. S. Atty., Pittsburgh, Pa., Mimi Methvin, Staff Atty., Dept. of the Interior, Charleston, W. Va., for plaintiff.

Stephen C. Braverman, Philadelphia, Pa., for defendant.

## OPINION

DUMBAULD, District Judge.

In the case at bar the United States sues to collect a civil penalty [1] of $1,000 allegedly incurred by defendant coal company for violation of a regulation prohibiting pollution of a stream by discharging mine drainage without first purifying it by use of a sedimentation pond.[2]

Defendant does not contest the existence of the violation, but alleges that section 518(c) [30 U.S.C. § 1268(c)] of the Surface Mining Control and Reclamation Act of August 3, 1977, 91 Stat. 447, 30 U.S.C. § 1201 *et seq.*[3] is unconstitutional, as a denial of due process and equal protection.[4]

The challenged provision requires that when the Secretary of the Interior has informed the operator of the proposed amount of a penalty, the person charged may have 30 days within which to pay in full, "or, if the person wishes to contest either the amount of the penalty or the fact of the violation, [shall] forward the proposed amount to the Secretary for placement in an escrow account."[5] "Failure to forward the money to the Secretary within thirty days shall result in a waiver of all legal rights to contest the violation or the amount of the penalty." 30 U.S.C. § 1268(c).

It is the requirement of prepayment which constitutes the basis of defendant's contention of unconstitutionality.[6]

---

1. This Court has jurisdiction under 30 U.S.C. § 1268(d).

2. The regulation involved was 30 C.F.R. 715.-17(a) as then numbered.

3. The Act establishes a broad regulatory framework to ensure that mining practices will not injure agriculture, the environment, or public health and safety. 30 U.S.C. § 1201; *Hodel v. Va. Surface Mining and Reclamation Assn.,* —— U.S. ——, ——, 101 S.Ct. 2352, 2385, 69 L.Ed.2d 1, 54 (1981).

4. The government contends that defendant has no standing to raise the equal protection argument.

5. If it is subsequently determined that no violation occurred, or that the amount of the penalty should be reduced, the Secretary shall within 30 days remit the appropriate amount with interest at 6% or at the rate for Treasury bills, whichever is greater.

6. The same point was urged in *Hodel, supra* note 3, —— U.S. at ——, 101 S.Ct. at 2374, 69 L.Ed.2d at 34, but was held to be premature, as no civil penalties had been assessed against

It can be plausibly argued, as defendant does, that if due process requires a hearing *before* the government quits paying *its own money* to a relief recipient,[7] a hearing should *a fortiori* be required before the government takes *his* own money from a citizen in satisfaction of a purported governmental exaction.

A clear exposition of the circumstances indicating whether pre-deprivation hearing is required or not is found in *Matthews v. Eldridge*, 424 U.S. 319, 332–35, 340, 96 S.Ct. 893, 901–3, 905, 47 L.Ed.2d 18 (1976). Whether the procedures provided "are constitutionally sufficient requires analysis of the governmental and private interests, that are affected." *Matthews* is controlling for the case at bar.

■ It seems clear that the validity of the prepayment requirement is to be determined, not by a mechanical temporal test, but by the reasonableness of the statutory scheme as a whole. In that connection it should be emphasized that under 30 U.S.C. § 1275 and 43 C.F.R. 4.1160 *et seq.* the operator is entitled, without any prepayment, to obtain a full adversary evidentiary hearing before an impartial ALJ with respect to the existence of the violation charged in the notice. If no violation is established, of course there will be no penalty assessed, and no occasion to seek the "second bite of the apple" under the prepayment provision of 30 U.S.C. § 1268(c). Moreover, immediately upon receipt of the notice charging a violation the operator may informally submit any pertinent material which he wishes to be considered in connection with the decision to assess a

penalty and to determine the amount thereof. 30 C.F.R. 723.16(a). Furthermore, upon receipt of the proposed penalty assessment the operator may seek an informal conference to haggle over the amount of the penalty to be assessed. 30 C.F.R. 723.-17(a). This was the only remedy which defendant in the case at bar utilized (unsuccessfully).

It is thus clear that there was afforded to defendant ample, abundant, and adequate additional remedies which satisfy the criteria of reasonableness and due process.

The prepayment requirement is thus seen to be an appropriate means of discouraging frivolous resort to an additional avenue of delay for the purpose of prolonging the collection process and postponing the painful moment of payment. Past experience, as the legislative history shows, indicated the wisdom of enacting such a provision. 95th Cong., 1st Sess., S.Rep.No.95–128, 58–59 (1977).

The temporary loss of use of a small sum for a short time is surely *de minimis* in comparison to the other expenditures and outlays which a coal operator is obliged to make in order to carry on business. If successful in upsetting or reducing the penalty he is reimbursed the amount prepaid, together with interest at 6% or that on Treasury bills, whichever is higher. This hardship is insufficient to constitute deprivation without due process.

■ On the equal protection point, defendant's contentions are even less persuasive. Defendant contends that the statute creates two classes of coal operators, *i.e.*

---

plaintiffs there, who had suffered no injury other than the mere enactment of the statute, and there was no genuine case or controversy for adjudication.

**7.** As held in *Goldberg v. Kelly*, 397 U.S. 254, 264, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970). See also *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 342, 89 S.Ct. 1820, 1823, 23 L.Ed.2d 349 (1969); *Fuentes v. Shevin*, 407 U.S. 67, 80–82, 92 S.Ct. 1983, 1994–95, 32 L.Ed.2d 556 (1972); *Bell v. Burson*, 402 U.S. 535, 539–40, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971); *Finberg v. Sullivan*, 634 F.2d 50, 57–58 (C.A.3, 1980). But other cases point in the other direction.

*Fahey v. Mallonee*, 332 U.S. 245, 253–54, 67 S.Ct. 1552, 1554–56, 91 L.Ed. 2030 (1947); *Ewing v. Mytinger & Casselberry, Inc.*, 339 U.S. 594, 599–600, 70 S.Ct. 870, 872–873, 94 L.Ed. 1088 (1950); *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971). Collection of penalties is similar to collection of taxes, where prior adjudication is not constitutionally required. *Phillips v. Comm'r*, 283 U.S. 589, 595, 596–97, 51 S.Ct. 608, 611–12, 75 L.Ed. 1289 (1931); *Flora v. U. S.*, 357 U.S. 63, 68, 78 S.Ct. 1079, 1082, 2 L.Ed.2d 1165 (1958); 362 U.S. 145, 155, 80 S.Ct. 630, 635, 4 L.Ed.2d 623 (1960).

those who can and those who can not afford the $1,000 penalty assessed here; and that such classification is discriminatory and violates equal protection.

But in truth the statute does not establish any classification at all. The penalty applies to all violations equally. The separation of sheep and goats depending on their ability to pay the penalty is not effected by statute but by "the magic of the marketplace" (to use President Ronald Reagan's phrase). One might as well assert that Ford Motor Company violates the equal protection clause by unconstitutionally setting the price of a Continental at a figure which one "class" of motorists is unable to pay, but which the other "class" can afford.

Moreover, language in Justice Marshall's opinion in *Hodel v. Indiana,* 452 U.S. 314, 331, 101 S.Ct. 2376, 2386, 69 L.Ed.2d 40, 55 (1981),[8] although dealing with other portions of the Act relating to "prime farmland," is indicative of the appropriate disposition of defendant's equal protection argument:

> Social and economic legislation like the Surface Mining Act that does not employ suspect classifications or impinge on fundamental rights must be upheld against equal protection attack when the legislative means are rationally related to a legitimate governmental purpose.[9]

Similarly, in *Phillips v. Comm'r,* 283 U.S. 589, 596–97, 51 S.Ct. 608, 611, 75 L.Ed. 1289 (1931), Mr. Justice Brandeis stated that "Where only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for the ultimate judicial determination of the liability is adequate." See also 339 U.S. at 599, 70 S.Ct. at 872.

Not only is defendant's equal protection argument utterly specious, but the Government's contention that defendant lacks standing to raise the question has substantial merit. Without traversing the intricate quagmire of standing, it suffices to state that, as the Government points out, defendant does not allege that it is unable to pay the $1,000 penalty,[10] and it is basic doctrine that one party, whose interests have not been impinged by the alleged unconstitutionality, has no standing to vindicate the constitutional rights of someone else who might be injured by application of the challenged statute. See *e.g. Tileston v. Ullman,* 318 U.S. 44, 46, 63 S.Ct. 493–94, 84 L.Ed. 732 (1943).

Finally, in its reply brief, defendant draws attention to a statement in the Federal Register of December 1, 1981, in which the Department of Interior's Office of Surface Mining Reclamation and Enforcement (OSM) comments (46 Fed.Reg. 58468) on the possibility that enforcement of the prepayment requirement "in certain circumstances" might force insolvent operators "to choose between contesting a violation or staying in business."

The OSM's pronouncement is not to be accorded the weight of a legal adjudication, but is obviously merely an expression of policy, as to the wisdom or propriety of which we of course take no position. The current Carter-Reagan philosophy of "deregulation" and "getting the government off the public's back" would naturally call for a relaxation of any governmental regulations which prove onerous to the private sector and are not indispensable for the protection of the environment and public health and safety. The OSM was doubtful,

---

**8.** A companion case decided the same day as the *Hodel* case cited in notes 3 and 6, *supra.*

**9.** The quoted passage makes clear that the Surface Mining Act is to be scrutinized for equal protection analysis under the "rational relationship" test rather than the dubious "compelling interest" test which defendant urges.

**10.** In that connection, we are disinclined to surmise that the eminent law firm (of which the late distinguished Mayor of Philadelphia, Richardson Dilworth, was a member) representing defendant does so in partial fulfilment of its professional obligation to defend the indigent, offsetting the diminution of service provided by the Legal Services Corporation necessitated by cuts in the Reagan-Stockman budgets. David R. Brink, *President's Page,* 68 Am.Bar Assn.J. 6 (January, 1982).

however, whether under existing law it was at liberty to grant dispensation from the prepayment requirement in circumstances where insolvency was imminent, and its suggestions were all *de lege ferenda*. These utterances constitute no bar to collection of the penalty assessed against defendant.

For the foregoing reasons, defendant's motion to dismiss must be denied. Since there appear to be no genuine issues of fact in dispute, and since under the terms of 30 U.S.C. § 1268(c), which we hold to be valid and constitutional, defendant has waived "all legal rights to contest the violation or the amount of the penalty," and no other matters appear germane as a possible defense to a simple action to collect a liquidated sum due and payable, and since the policy of Congress embodied in the Act calls for prompt collection of penalties as an incentive to the elimination of environmental pollution, we proceed to enter judgment for plaintiff and against defendant for the sum of $1,000, together with interest and costs.