**UNITED STATES of America, Plaintiff,**

v.

**CROOKSVILLE COAL CO., INC., Defendant.**

**No. C–2–81–385.**

United States District Court, S.D. Ohio, E.D.

Nov. 3, 1982.

Sandra Berry, Columbus, Ohio, for plaintiff.

Walter Howdyshell, New Lexington, Ohio, for defendant.

## MEMORANDUM AND ORDER

DUNCAN, District Judge.

This is a civil action brought on behalf of the United States of America at the request of the Secretary of the Interior pursuant to § 1268(d) of the Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. §§ 1201 *et seq.,* seeking to recover civil penalties assessed against defendant Crooksville Coal Co., Inc. The lawsuit is presently before the Court on plaintiff's unopposed motion for summary judgment.

■ It is the Court's decision that the plaintiff's motion for summary judgment should be granted in part and denied in part. As a general rule, in granting a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, a trial court must be satisfied that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law. The fact that the motion for summary judgment is unopposed does not relieve the Court of the task of determining whether a material factual dispute exists. *Smith v. Hudson,* 600 F.2d 60 (6th Cir.1979).

### I. *Undisputed Facts*

It is the opinion of this Court, however, based on all the materials presently before it, that with regard to the due process challenge to the Surface Mining Control and Reclamation Act, there is no genuine issue of material fact. From the entire record before this Court, the following facts appear to be undisputed:

The defendant, Crooksville Coal Co., Inc., operates a surface coal mining operation in Perry County, Ohio. On March 17, 1980, Notice of Violation 80–3–14–14 was issued pursuant to 30 U.S.C. § 1271(a)(3) to defendant Crooksville Coal for two violations of the Surface Mining Control and Reclamation Act (the Act). Following the issuance of this notice of violation, a proposed assessment of civil penalty of $5,200.00 was sent to and received by the defendant. In October of 1980 a final order of civil penalty assessment was received by defendant, and in November a final demand letter was issued. Defendant failed to pay the amount of the proposed assessment or to deposit that amount in escrow.

In June of 1979 another Notice of Violation, 79–3–14–21, was issued to the defendant. Following issuance of this notice of violation, a proposed assessment of civil penalty of $3,100.00 was sent to and received by the defendant. Pursuant to 30 C.F.R. § 723.17, the defendant requested a settlement conference within 15 days from receipt of the proposed penalty. As a result of the assessment conference, the proposed penalty was reduced to $2,400.00. In August of 1980, a final order of civil penalty assessment was received by the defendant, and a final demand letter was received by the defendant in September of 1980. The defendant has failed to pay the amount of

either of the civil penalties assessed or to deposit that amount in escrow. Since no payments have been received at this time, the full amount of the penalties remain outstanding.

## II. *Statutory Construction of 30 U.S.C. § 1268*

The plaintiff's position is that by virtue of defendant's failure to pay or deposit in escrow the amount of the proposed assessment, the plaintiff has, pursuant to 30 U.S.C. § 1268, waived all legal rights to contest the existence of the violation of the amount of the penalty in this proceeding. The defendant's position, however, is that the enforcement provisions found in 30 U.S.C. § 1268 suffer from constitutional, due process infirmities which prevent this Court from enforcing those provisions. In order to fully evaluate defendant's due process challenge to the enforcement provisions of this Act, it is necessary to review the statutory scheme for assessing and collecting civil penalties.

A close examination of the procedures provided in the Act and the implementing regulations for assessing and challenging a civil penalty initially reveal that this Act was an attempt to "establish a nationwide program to protect society and the environment from the adverse effects of surface coal mining operations." 30 U.S.C. § 1202(a). The Court need not describe in detail the various provisions of the Act or the implementing regulations which are not relevant to those challenged herein.[1] Rather a brief survey of the assessment provisions challenged by the defendant is all that need be undertaken here.

The defendant's constitutional challenge to the Act and its implementing regulations initially focuses on the provisions requiring the payment of the assessed penalty. The procedures followed by the Secretary of the Interior in assessing civil penalties, and the administrative and judicial appeal rights afforded mine operators are set forth in 30 U.S.C. § 1268 *et seq.*; 30 C.F.R. § 723.1 *et seq.*

According to § 1268(a), the Secretary of the Interior notifies the operator of the proposed assessment of a civil penalty within 30 days of the charged violation. 30 U.S.C. § 1268(c); 30 C.F.R. §§ 722, 723. The operator is then entitled to a conference before payment of the assessment if a request for such a conference is made within 15 days of the receipt of the notice of the proposed assessment. The operator is entitled to present information relevant to the proposed penalty at this conference, at which time the amount of the proposed penalty may be reduced or vacated entirely. 30 C.F.R. § 723.18; 43 C.F.R. § 4.1157. Once the conference concludes, the operator has 15 days to petition for an evidentiary hearing to review the proposed penalty. *Id.*[2]

If no conference is requested by the operator, he must tender within 30 days of notification of the proposed assessment the full amount of that assessment to be held in escrow. 30 U.S.C. § 1268(c). Failure to do so results in a waiver of all legal rights to contest the violation or the amount of the penalty.

If payment is tendered within the 30 days, the operator may request a hearing conducted pursuant to the Administrative Procedure Act, 5 U.S.C. § 554, to review

---

1. Complete descriptions of these provisions can be found in *Hodel v. Indiana,* 452 U.S. 314, 101 S.Ct. 2376, 69 L.Ed.2d 40 (1981); *Hodel v. Virginia Surface Mining & Reclamation Ass'n., Inc.,* 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981). In both the cases cited above, the Supreme Court vacated the district court's decisions that the civil penalty provisions were unconstitutional and ruled that such challenges were premature since there had not been assessed a civil penalty in either case. Therefore there has been no definitive statement from the Supreme Court on the constitutionality of the provisions challenged herein by Crooksville Coal Co.

2. Within 15 days of the date the conference is concluded and the penalty is finally assessed, however, the operator must pay into escrow the full amount of the proposed penalty or waive all legal rights to contest the violation or the amount of the penalty. 30 U.S.C. § 1268(c).

the proposed assessment. 30 U.S.C. § 1268(c); 30 C.F.R. § 723, 43 C.F.R. §§ 4.1151, 4.1152. The administrative law judge may decide that a violation was incorrectly cited and lower or vacate the penalty assessed. If the penalty is reduced or vacated, then the amount previously tendered by the operator must be remitted to him with interest within 30 days. 30 U.S.C. § 1268; 43 C.F.R. § 4.1157(c).[3] The administrative law judge's decision may be appealed to the Board of Surface Mining and Reclamation Appeals, and the Board's decision may be appealed to the district court. 30 U.S.C. § 1276(a)(2); 43 C.F.R. § 4.1158.

## III. Constitutionality of § 1268

■ The above description of the civil penalty assessment procedures authorized by 30 U.S.C. § 1268 and implemented by 30 C.F.R. § 723 et seq., and 43 C.F.R. § 4.1150 et seq. reveals that these procedures comport with the procedural due process requirements of the Fifth Amendment. The concept of procedural due process is a flexible one, the essential elements of which are notice and opportunity to be heard. Mullane v. Central Hanover Trust Company, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

A determination of whether a pre-deprivation hearing is required initially entails a consideration of the Supreme Court's decision in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). In that case, the Supreme Court set out the various factors to be considered in determining precisely what process is due an aggrieved party.

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedure used, and the probable value, if any, of additional or substitute procedural safeguards; and, finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews v. Eldridge, 424 U.S. at 335, 96 S.Ct. at 903. In applying the analysis set forth in Mathews to the assessment provisions of this Act, this Court has determined that the procedural due process requirements of the Fifth Amendment are met.

The private interest adversely affected by the current procedures under the Act is the temporary deprivation of the operator's money. The deprivation is temporary since an operator who succeeds in having the penalty reduced or vacated, is entitled to the return of the assessment plus interest within 30 days of the decision reducing or vacating the assessment.[4] This Court is convinced, therefore, that the potential deprivation that may occur under this Act is of a lesser magnitude than the deprivation suffered by a welfare recipient who loses his very means of subsistence. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).[5]

Furthermore, this Court believes that under the present procedures, the risk of an erroneous deprivation is slight. The Secretary, in determining whether to assess a civil penalty, is required to consult and be

---

**3.** The Act also sets up an alternative procedure to that already outlined. Under this alternative, an operator is entitled, without any prepayment, to obtain a full adversary evidentiary hearing before an administrative law judge with respect to the existence of the violation charged in the notice. See 30 U.S.C. § 1275 and 43 C.F.R. § 4.1160 et seq.

**4.** The possible length of wrongful detention of prepayment monies is theoretically very short since the operator is entitled to a prompt hearing following the tendering of payment under the Act. 30 U.S.C. § 1268(c); 30 C.F.R. § 723; 43 C.F.R. §§ 4.1151, 4.1152. Arguably any in-

correct assessment will be caught at this point in the proceedings and the amount wrongfully assessed will be remitted to the operator. Furthermore, arguably the availability of a prompt past-taking hearing meets any due process requirements of the Fifth Amendment. Cf. Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).

**5.** It is also worth noting at this point the only harm the operator suffers is loss of the use of his money while he challenges the assessment. The operator continues to possess his major source of income, i.e., the mining and marketing of coal.

governed by specific criteria found in the federal regulations.[6] Furthermore, the operator, prior to paying any money into escrow, may request an informal assessment conference at which time the operator is given the opportunity to present information concerning the proposed penalty. 30 C.F.R. § 723.18; 43 C.F.R. § 4.1157. While it is true that a full pre-deprivation hearing would reduce the risk of an erroneous assessment, the present pre-taking conference adequately safeguards the private interests of the operator; this is especially true in light of the availability of a prompt post-taking evidentiary hearing.

Finally, the government has a substantial interest in the prompt assessment and collection of civil penalties so as to insure compliance with this Act. Procedures which promote compliance with this Act, the purpose of which is "to protect society and the environment from the adverse effects of surface coal mining operations," 30 U.S.C. § 1202(a), serve a substantial government interest which cannot be underestimated. It is beyond question that the presence of a substantial government interest may justify the delaying of a hearing until after property has been seized. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); *Phillips v. Commissioner,* 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931). Therefore, this Court concludes that since this Act's civil penalty assessment procedures serve an important government interest while only slightly impinging on a private inter-

est, these procedures are constitutionally sufficient.[7]

## IV. *Double Penalty*

In addition to alleging a violation of the due process clause, the defendant contends that because it has been assessed a penalty by the State of Ohio for violations of state law, "any other action should constitute a violation of defendant's rights under the U.S. Constitution and the Ohio Constitution." *See* Defendant's Answer, Second Defense. The defendant does not specify what "rights" are allegedly violated by the federal enforcement action, but by the same token the plaintiff offers no support for its contention that the statutory provisions of this Act allow concurrent enforcement by both the state and the federal government.

Arguably, under the federal statutory scheme a state may adopt a regulatory program containing the full panoply of federal standards, and which when approved by the Secretary becomes the exclusive means for enforcing this statute. *See* 30 U.S.C. §§ 1252–1256; 30 C.F.R. §§ 733, 736. Arguably, therefore, responsibility for enforcement of this statute rests with either the state government or the federal government, but not both governments.

On the facts as presented at this stage of the litigation in this case, it is impossible for this Court to make an informed decision as to whether prior enforcement of the state law precludes enforcement of the federal law. In order for this Court to make an informed decision on this issue it is necessary to know the nature of the state law involved, as well as the details surrounding

---

**6.** The criteria used in determining whether to assess a civil penalty are found in 30 C.F.R. §§ 723.11, 723.12. Basically, the Secretary is required to utilize a point system based on four separate criteria in assessing the civil penalty. The criteria to which point values are assigned include: the history of previous violations; the seriousness of the violation; operator negligence; and good faith. The points which are to be assigned for certain criteria are set forth specifically. *See* 30 C.F.R. §§ 723.12(b) (for example, one point for each past violation). The points assigned for other criteria are deter-

mined on a sliding scale basis. *See, Id.,* at 723.12(c)(1).

**7.** It is worth noting that several jurisdictions which have addressed this identical issue, have also upheld the constitutionality of these penalty assessment procedures. *See, e.g., United States v. Thompson Bros. Coal Co., Inc.,* 532 F.Supp. 979 (W.D.Pa.1982); *United States v. Hill,* 533 F.Supp. 810 (E.D.Tenn.1982); *B & M Coal Corp. v. Office of Surface Mining Reclamation and Enforcement,* 531 F.Supp. 677 (S.D. Ind.1982).

the state enforcement procedures.[8] Until such time as all relevant facts are before this Court, it is impossible to determine whether there is a genuine issue of material fact or whether the moving party is entitled to judgment as a matter of law. Therefore, insofar as the assessment of a double penalty is concerned, the plaintiff's motion for summary judgment is DENIED.

So ORDERED.

---

8. For example, it would be helpful if the Court knew if the state law enforced in this case was part of a state enforcement program approved by the Secretary. In addition, the Court would be aided in its determination if it knew whether the state law was in effect prior to the passage of the federal statute, and if so, whether that state law is superceded by the federal law. Additional facts which would prove helpful to the Court in making its determination include: the nature of the state enforcement proceedings; whether the state law is in any way inconsistent with the federal scheme; and whether the federal enforcement proceeding will be duplicative rather than complementary to the state proceedings.