**B & M COAL CORPORATION, Plaintiff, Counter-defendant-Appellant,**

v.

**OFFICE OF SURFACE MINING RECLAMATION AND ENFORCEMENT, Defendant, Counter-claimant-Appellee.**

No. 82–1380.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 26, 1982.

Decided Feb. 1, 1983.

Halbert W. Kunz, Kunz & Kunz, S. Gregory Zubel, Kunz & Kunz, Indianapolis, Ind., for plaintiff.

Robert L. Klarquist, Dept. of Justice, Land & Natural Resources Div., Washington, D.C., for defendant.

Before PELL, Circuit Judge, SWYGERT, Senior Circuit Judge, and MAROVITZ, Senior District Judge.[*]

SWYGERT, Senior Circuit Judge.

The issue in this appeal is whether section 518(c) of the Surface Mining Control and Reclamation Act of 1977 ("the Act"), 30 U.S.C. § 1268(c), which requires an escrow deposit of a proposed penalty assessment prior to a formal hearing, is unconstitutional as violative of procedural due process rights secured by the fifth amendment. Given the procedural and administrative safeguards provided by the Act and various regulations, the district court found no constitutional deficiency in this prepayment requirement.[1] We affirm.

I

Plaintiff-appellant B & M Coal Corporation ("B & M Coal") conducts a surface coal mining operation in Spencer County, Indiana. Between September 1978 and March 1979 the Office of Surface Mining Reclamation and Enforcement ("OSM") issued three notices of violations against B & M Coal for improper mining and reclamation practices.[2] The proposed penalties for these three violations totaled $6900. B & M Coal requested an assessment conference with the OSM on all three violations. The June 13, 1979 conference resulted in a reduction in fines to a total of $2900.

B & M Coal subsequently petitioned the Hearings Division of the Interior Department's Hearings Office for an evidentiary hearing to challenge both the validity of the alleged violations and the proposed penalty. Because B & M Coal refused to pay the $2900 fine into an escrow account as required by the Act, the administrative law judge in the Hearings Division granted the OSM's motion to dismiss.

B & M Coal filed the instant action in the United States district court[3] against the Secretary of Interior and the OSM, alleging that section 518(c) of the Act and its accom-

---

* The Honorable Abraham Lincoln Marovitz, United States Senior District Judge for the Northern District of Illinois, sitting by designation.

1. 531 F.Supp. 677 (S.D.Ind.1982).

2. Notice of Violation No. 78–III–2–18, Sept. 20, 1978: failure to remove the "B" horizon of soil prior to blasting operations, failure to control surface runoff in the permit area; Notice of Violation No. 79–III–2–9, Mar. 8, 1979: failure to maintain water treatment facilities, failure to post perimeter markers, mining within one hundred feet of a road without a variance; Notice of Violation No. 79–III–2–12, Mar. 12, 1979: failure to meet prescribed effluent limitations for discharges from mining site.

3. Jurisdiction was based on 30 U.S.C. § 1276(a)(1).

panying regulations [4] violated its procedural due process rights by requiring an escrow deposit of the proposed penalty prior to receiving a formal hearing on the assessment. The Secretary counterclaimed for the $2900 assessed fine. The district court granted summary judgment in favor of the Secretary and the OSM, finding the prepayment requirements constitutional and ordering B & M Coal to pay the penalty. This appeal followed.

## II

Section 102(a) of the Act states a congressional intent to "establish a nationwide program to protect society and the environment from the adverse effects of surface coal mining operations." [5] 30 U.S.C. § 1202(a). Title V of the Act incorporates enforcement provisions, including cessation orders and the assessment of civil penalties, to ensure compliance. 30 U.S.C. §§ 1251–79. The portion of the Act in dispute in this case is section 518(c), 30 U.S.C. § 1268(c), which provides in relevant part:

Upon the issuance of a notice or order charging that a violation of the Act has occurred, the Secretary shall inform the operator within thirty days of the proposed amount of said penalty. The person charged with the penalty shall then have thirty days to pay the proposed penalty in full or, if the person wishes to contest either the amount of the penalty or the fact of the violation, forward the proposed amount . to the Secretary for placement in an escrow account. . . . Failure to forward the money to the Secretary within thirty days shall result in a waiver of all legal rights to contest a violation or the amount of the penalty.

The crux of B & M Coal's challenge to this provision is that the prepayment, enforced by the sanction of a complete waiver of all legal rights to contest the violation, constitutes a denial of procedural due process. [6] B & M Coal argues in essence that a full adversarial hearing before deposit of the penalty is constitutionally mandated. Our decision begins with a review of the Act's procedural framework, the substance of which is not disputed.

The Act authorizes the Secretary to assess civil penalties for violations and, together with regulations promulgated by the Secretary, prescribes the following procedural steps.

Within ten days after service of a notice of violation, an operator may submit written information concerning the cited violations. 30 C.F.R. § 723.16(a). OSM must consider any information submitted in determining whether to assess a civil penalty and the amount of the penalty. (Despite receipt of written notice of this right in each of the three citations, B & M neglected to submit any information to OSM prior to issuance of the proposed assessments.)

Within thirty days of the issuance of a notice of violation, the operator may apply for formal administrative review of the citation. Section 525, 30 U.S.C. § 1275; 43 C.F.R. §§ 4.1160 *et seq.* The operator is entitled to a full, adversarial, evidentiary hearing before an administrative law judge, who reviews the validity of the notice and has the power to vacate, affirm, or modify the citation. At the hearing, the operator, who may be represented by counsel, has the opportunity to confront adverse witnesses and to present his own witnesses, evidence, and arguments pursuant to 5 U.S.C. § 554.

---

**4.** *See* 30 C.F.R. § 723.18(a), 43 C.F.R. § 4.1152(b)(1) (1979).

**5.** A comprehensive review of portions of the Act not relevant here is provided in *Hodel v. Indiana,* 452 U.S. 314, 101 S.Ct. 2376, 69 L.Ed.2d 40 (1981), and *Hodel v. Virginia Surface Mining and Reclamation Association, Inc.,* 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981). In both cases the Supreme Court vacated district court rulings holding section 518(c) unconstitutional. Because no fine had

been assessed, the operators' challenge to section 518(c) was held premature. No such infirmity exists in the instant case.

**6.** We consider our holding on the due process issue dispositive of B & M Coal's alternative claim that the escrow deposit requirement constitutes a "taking" without compensation in violation of the fifth amendment. The deposit is not a final deprivation. Any fine later determined to have been wrongly "taken" is returned to the coal operator, with interest.

The operator is entitled to this hearing with deposit of any sum. (B & M failed to request a formal hearing on the notices issued in this case.)

A charged operator may also request temporary relief from an administrative law judge prior to the hearing on the merits of the violation. Section 525(c), 30 U.S.C. § 1275(c); 43 C.F.R. §§ 4.1270 *et seq.* The Secretary's regulations also authorize appeals to an administrative review board and, ultimately, the statute grants access to judicial review. Decisions of the administrative law judge and the Board are based solely upon the applicable regulations and evidence adduced at the hearing. Each decision must contain a statement of the reasons for the decision and the evidence upon which the judge relied. Section 525(b), 30 U.S.C. § 1275(b); *see also* 5 U.S.C. § 554. No monetary deposit is required prior to an application for temporary relief.

Once an operator has been charged with a violation, the Secretary has thirty days to determine whether to assess a civil penalty, to calculate the amount of the penalty, and to inform the operator of the amount of the proposed penalty. Section 518(a), 30 U.S.C. § 1268(a). Within fifteen days of receiving notice of a proposed assessment of a civil penalty, an operator may request an informal conference to review the amount of the proposed penalty. 30 C.F.R. § 723.17(a).

At the "assessment conference" the operator may be represented by counsel and may present any relevant witnesses, evidence, and arguments. OSM must consider any information presented by the operator at the conference in deciding whether to affirm, vacate, raise, or lower the penalty. After the decision, the conference officer (an OSM employee having no previous connection with the case) serves a copy of the new assessment on the operator. 30 C.F.R. § 723.17(b). The regulations do not require that the operator deposit the proposed penalty into escrow in order to obtain an assessment conference.

Within fifteen days of the assessment conference's conclusion, or, if no conference is requested, within fifteen days of receipt of the proposed assessment, the operator is entitled, upon tender of the proposed penalty, to a full, adversarial, evidentiary hearing conducted by an administrative law judge, concerning both the validity of the cited violation and the amount of the proposed penalty. Section 518(c), 30 U.S.C. § 1268(c). If the operator wins a further penalty reduction or elimination in this formal review, the amount improperly assessed, plus interest,[7] must be returned to the operator within thirty days. However, if the operator fails to pay into escrow the full amount of the proposed penalty, all rights to contest the violation or the amount of the penalty are waived. Section 518(c), 30 U.S.C. § 1268(c); 43 C.F.R. § 4.1152(c).

The decision of the administrative law judge may be appealed to the Board of Surface Mining and Reclamation Appeals and the Board's decision is subject to judicial review. Section 526(a)(2), 30 U.S.C. § 1276(a)(2); 43 C.F.R. § 4.1158.

### III

It is settled that "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). To determine whether the Act's prepayment procedure is constitutionally sufficient requires consideration of the governmental and private interests affected. *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Specifically, the analysis

> requires consideration of three distinct factors. First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedure used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Govern-

---

7. The applicable interest rate is six percent per annum or the prevailing Department of Trea- sury rate, whichever is greater. *See* 43 C.F.R. § 4.1157(c).

ment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). Consideration of the procedures afforded by the Act in light of these factors leads us to conclude that those procedures satisfy constitutional standards.

■ The initial *Eldridge* criterion requires identification of the specific private interest affected by the challenged governmental action. B & M Coal argues that the interest here affected is the use of its own money. Perhaps more accurately stated, the interest is in the use of its money during the time from the escrow deposit until all avenues of appeal have been exhausted. We agree with the district court that this interest is not of such magnitude to render section 518(c) and its attendant regulations unconstitutional. B & M Coal's deposit is not a final taking; should it prevail at the full hearing or at any stage of review thereafter the money wrongly assessed is returned with interest. We consider this to be adequate compensation for B & M Coal's loss of the use of its money during the review process.

We find unpersuasive B & M Coal's suggestion that its private interest in the use of its money is "arguably as high" as the interest affected in *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). *Goldberg* concerned the prehearing termination of welfare payments, an interest characterized by the Supreme Court as "the very means by which to live." *Id.* at 264, 90 S.Ct. at 1018. To be sure, it could be that a number of coal mining operators will be burdened by the prepayment requirement. Yet given the opportunities afforded by the Act and the promulgated regulations to challenge the validity of the violations as well as the amount of the penalty before a deposit is required, we think the burden to be slight. Private interests which we consider to be of greater magnitude have not warranted predeprivation hearings. For example, in *Mathews v.*

*Eldridge,* it was held that the termination of Social Security disability benefit payments need not be preceded by an evidentiary hearing. If, as the Supreme Court held in that case, "the disabled worker's need is likely to be less than that of a welfare recipient," 424 U.S. at 342, 96 S.Ct. at 906, then the interest here involved is even farther removed on the private interest spectrum.

We also agree with the district court that the administrative review options available to an operator prior to the deposit required by section 518(c) sufficiently lowers the likelihood of an erroneous deprivation of B & M Coal's interest in the use of its money. Due process "has never been construed to require that the procedures used to guard against an erroneous deprivation of a protectible 'property' or 'liberty' interest be so comprehensive as to preclude any possibility of error." *Mackey v. Montrym,* 443 U.S. 1, 13, 99 S.Ct. 2612, 2618, 61 L.Ed.2d 321 (1978). As we have previously described, the Act and its regulations incorporate a number of prophylactic measures to lessen the potential of erroneous determinations. Following the notice of violation, an operator is entitled to a full hearing to contest the violation without making a deposit. If a penalty is assessed, the amount of which is based upon a point system, the operator may submit a written challenge to the penalty and request the informal assessment conference. Only after this conference is concluded must the operator deposit the proposed penalty to secure further review.

It may be true, as B & M Coal argues, that following a notice of violation an operator will face the decision whether to contest the fact of the violation at the full hearing or waive the hearing in the belief that no penalty will be later assessed. Should an operator choose the latter strategy, B & M Coal points out that the right to contest the violation itself without making a deposit will be lost. We do not believe, however, that the consequences of an operator's failure to take advantage of the relief available renders the statutory scheme unconstitutional. The Act and its pertinent

**386**

regulations are in accord with the "ordinary principle ... that something less than an evidentiary hearing is sufficient prior to adverse administrative action." *Mackey v. Montrym,* 443 U.S. at 13, 99 S.Ct. at 2618 (citations omitted).

B & M Coal further argues that the informal assessment conference, which in this case resulted in a considerable reduction in fine, is not a meaningful opportunity to be heard. Citing no authority, B & M Coal asserts that because the presiding officer at this conference is an OSM employee, the proceeding is prejudicially tainted. The fact, however, that the conference is before an official charged with enforcement of the Act does not, by itself, render this prehearing review meaningless. *See Withrow v. Larkin,* 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975); *Fahey v. Mallonee,* 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947).

Finally, we turn to the third *Eldridge* inquiry requiring consideration of the governmental interest involved and the administrative burdens that an additional procedural requirement would entail. The OSM and B & M Coal agree that the prepayment requirement of section 518(c) is intended to promote effective collection of civil penalties assessed under the Act. The escrow deposit procedure was included to "avoid the problem of noncollection of fines." *See* S.Rep. No. 95–128, 95th Cong., 1st Sess. 59 (1977). B & M Coal argues, however, that such a governmental interest is insufficient to validate this collection process. Relying on *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1971), B & M Coal contends that only "extraordinary situations" justify dispensing with a full adjudicatory hearing prior to summary administrative action. The instant case is readily distinguishable from *Fuentes.*

*Fuentes* involved Florida and Pennsylvania laws authorizing summary seizure of goods. Under those laws, any person could,

*ex parte,* obtain a writ ordering state authorities to seize another's possessions. Neither statute provided that notice be given the other party or any type of hearing be conducted prior to the repossession of the goods. Such, of course, is not the case under the Surface Mining Control and Reclamations Act and its regulations. Without again recounting the administrative review procedures afforded under the Act prior to the required deposit, it is apparent that section 518(c) cannot be considered "summary" in the *Fuentes* sense. Moreover, even in response to the *Fuentes* statutes, the Supreme Court did not require a prior hearing of the sort that B & M Coal seeks here. Rather, "[t]he nature and form of such prior hearings ... are legitimately open to many potential variations ..."[8] 407 U.S. at 96, 92 S.Ct. at 2002. What is important is that B & M Coal was afforded an opportunity, at the informal conference, to present its evidence concerning the proposed assessment. In this context, B & M Coal has received all the process it is due. We conclude that a full adjudicatory hearing, with the concomitant fiscal and administrative burdens such would entail (*see Mackey v. Montrym,* 443 U.S. at 18, 99 S.Ct. at 2621) is not required prior to the escrow deposit.

The order of the district court is affirmed.

---

**8.** Indeed, *Fuentes* emphasized the flexible nature of due process hearing requirements:

The relative weight of liberty or property interests is relevant, of course, to the form of notice and hearing required by due process.... But *some* form of notice and hear-

ing—formal or informal—is required before deprivation of a property interest that "cannot be characterized as *de minimis.*" 407 U.S. at 90, n. 21, 92 S.Ct. at 1999, n. 21 (citations omitted) (emphasis in original).