Maynard C. GRAHAM and Graham Brothers Coal Co., Appellants,

v.

**OFFICE OF SURFACE MINING RECLAMATION AND ENFORCEMENT,** Appellee.

No. 83–5103.

United States Court of Appeals, Third Circuit.

Argued Oct. 25, 1983.

Decided Nov. 29, 1983.

Allan E. MacLeod (Argued), Wymard & Dunn, Pittsburgh, Pa., for appellants.

Carol E. Dinkins, Asst. Atty. Gen., Washington, D.C., J. Alan Johnson, U.S. Atty., Joel B. Strauss, Asst. U.S. Atty., Pittsburgh, Pa., David C. Shilton, Kathleen P. Dewey, Donald Hornstein (Argued), Attys., Dept. of Justice, Washington, D.C., for appellee; Mimi Methvin, Dept. of the Interior, Charleston, W. Va., Harold P. Quinn, Dept. of the Interior, Washington, D.C., of counsel.

Before GIBBONS, GARTH and HIGGIN-BOTHAM, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge:

Maynard Graham and Graham Brothers Coal Co. (Graham) appeal from an order granting summary judgment in favor of the Office of Surface Mining Reclamation and Enforcement (OSM). The district court upheld the constitutionality of Section 518(c) of the Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. § 1268(c) (Supp. II 1978). Section 1268(c) provides, inter alia, that a mine operator, against whom a civil penalty has been assessed by the OSM, must prepay the proposed amount of the penalty into escrow in order to preserve his right to appeal the penalty through various formal review procedures within the OSM and ultimately through the courts.[1] We agree with the district court that the Surface Mining Act (the Act) provides a mine operator ample opportunity to challenge the proposed penalty without prepayment into escrow, and thus affords due process. We also find that the statute is rationally based and does not offend the equal protection clause. We therefore affirm.

## I.

Graham has operated a mine in Clearfield County in Western Pennsylvania under a permit issued by the Commonwealth. By July or August of 1979, however, all coal had been removed from the permitted area. Graham then proceeded to mine in an adjoining ten acre plot for which a permit had not been issued. The Pennsylvania Department of Environmental Resources (DER) ordered Graham's operation shut down in November, 1979.

In January, 1980, Graham resumed mining under an agreement with DER which provided that the first $10,000 of mining receipts would be paid to DER as a bond for a permit amendment. By that time, however, all coal had already been removed from the adjoining ten acre plot. Graham expanded his operations even further to include areas which were not covered by the original permit nor in its amendment. In February, 1980, Graham received a notice from DER to cease mining. He apparently ignored that order. The police then delivered a special injunction to Graham at the site, at which time all coal operations stopped.

On March 21, 1980, a hearing was held before Judge Reilly of the Pennsylvania Court of Common Pleas. Judge Reilly gave Graham ten days to deliver a second mortgage on his own personal property for $60,000. He ruled that such a mortgage would satisfy the conditions and requirements of a permit and Graham could therefore continue operations. The Commonwealth indicated at that time that it would not appeal. Judge Reilly dissolved the special injunction, and Graham subsequently resumed mining. The Commonwealth later decided not to accept Graham's second mortgage, and refused to issue a permit. Graham considered the Commonwealth to be in contempt of court and continued to mine.

On June 10, 1980, inspectors from the OSM issued to Graham a Notice of Violation for mining without a valid state permit.[2] Graham was told that he must either

1. 30 U.S.C. § 1268(c) (Supp. II 1978):

   Upon the issuance of a notice or order charging that a violation of the chapter has occurred, the Secretary shall inform the operator within thirty days of the proposed amount of said penalty. The person charged with the penalty shall then have thirty days to pay the proposed penalty in full or, if the person wishes to contest either the amount of the penalty or the fact of the violation, forward the proposed amount to the Secretary for placement into an escrow account. If through administrative or judicial review of the proposed penalty, it is determined that

   no violation occurred, or that the amount of the penalty should be reduced, the Secretary shall within thirty days remit the appropriate amount to the person, with interest at the rate of 6 percent, or at the prevailing Department of the Treasury rate, whichever is greater. Failure to forward the money to the Secretary within thirty days shall result in a waiver of all legal rights to contest the violation or the amount of the penalty.

2. 30 U.S.C. § 1252(a) (Supp. II 1978) provides:

   No person shall open or develop any new or previously mined or abandoned site for

obtain a valid permit or restore the area within ninety days, i.e. by September 8, 1980. An informal review hearing was held on July 8, 1980. App. at 4. The hearing officer took into account the confusion regarding the state permit. Nevertheless, the notice of violation was confirmed.

Graham continued to mine after the September 8, 1980 deadline. On September 11, 1980, OSM served Graham with a Cessation Order for failure to abate the violation. App. at 6. The form of the order mandated that operations cease immediately, and informed Graham that a fine of at least $750 per day would be imposed for each day the violation remained unabated. Graham was entitled to, but apparently did not request review of this order.

On November 16, 1981, a Notice of Proposed Penalty Assessment was sent to Graham. OSM proposed to fine Graham $750 per day for a maximum period of thirty days, i.e. $22,500.00. Graham requested an informal assessment conference concerning the penalty. That conference was held on January 12, 1982. The OSM conference officer upheld the imposition of the fine. App. at 15–16.

In January 29, 1982, Graham sought formal review of the penalty before the Office of Hearings and Appeals of the Department of the Interior. App. at 17. Because Graham had not placed the amount of the proposed fine ($22,500) in an escrow deposit as required by 30 U.S.C. § 1268(c), see supra note 1, OSM successfully moved for dismissal of the appeal. On May 21, 1982, Graham appealed to the Board of Surface Mining and Reclamation Appeals. The Board denied discretionary review on June 9, 1982. App. at 39.

On July 9, 1982, Graham filed a petition for review in the District Court for the Western District of Pennsylvania. The OSM filed a motion to dismiss the action, or in the alternative for summary judgment, since Graham had not yet paid the proposed fine into escrow. Graham responded that he was unable to raise $22,500 and therefore could not comply with the statute's requirements. He argued that the statute which requires operators of mines to deposit the proposed amount of the fine into escrow as a condition to a review hearing, violated due process and equal protection.

The district court granted summary judgment in favor of OSM. The district court concluded that the statutory provision which precluded appeals without the prepayment of the proposed penalty passed constitutional muster under the equal protection and due process clauses. This being so, the court held that Graham had not exhausted the administrative remedies prescribed by statute, and that failure precluded judicial intervention at this point. The district court opinion stated that:

> We find that the procedural safeguards embodied within the Act to be constitutionally sound. Moreover, plaintiff's failure to deposit the proposed penalty into escrow transgressed the statutory scheme, bypassed the administrative safeguards and constituted a waiver of their right to contest the notice of violation, the cessation order, and the penalty in this district court.

## II.

The only question which is properly before this court, and which was properly before the district court, is whether 30 U.S.C. § 1268(c) is constitutional.[3] It is un-

surface coal mining operations on lands which such operations are regulated by a State unless such person has obtained a permit from the State's regulatory authority.

3. Graham, both in his brief and during oral argument, attempted to raise the substantive issue of whether the imposition of the penalty by OSM was warranted. The merits of Graham's contentions, however, were not properly before the district court. If § 1268(c) is found constitutional, then Graham waived all rights to contest the penalty. If it were found unconstitutional, then the proper course would be to

remand the matter to the OSM for further proceedings on the merits. Under either scenario, the actual dispute on the imposition of the penalty never reached the district court and consequently is not before us.

For much the same reason, Graham's argument that the district court should have granted a continuance pending discovery is unavailing. Additional discovery would have added nothing to the only inquiry which was properly before the court below, i.e. whether the prepayment provision was constitutional. The only fact which was necessary to pass on this ques-

disputed that Graham did not pay the proposed penalty into escrow. Thus, we must determine whether the statute with its companion provisions, which precludes Graham from contesting the charged violation or the amount of the assessed penalty because of a failure or inability to satisfy the escrow payment, violates Graham's guarantees of due process and equal protection.

### The Statutory Scheme

The various provisions concerning review of OSM decisions are somewhat complex. There are three stages in the process: (1) the Notice of Violation, (2) the Cessation Order, and (3) the Proposed Assessment of the Penalty.

The Notice of Violation, listing an operator's appeal rights, is issued by an OSM inspector on the site of the mine when he deems there to be a violation of statute but when there is no imminent danger to the public safety nor risk of environmental harm. 30 U.S.C. § 1271(a)(3) (Supp. II 1978). Upon receipt of the Notice, the mine operator may submit written information about the violation to the OSM and to the inspector who issued the Notice, which information must be considered in determining the amount of the penalty assessment. 30 C.F.R. § 723.16(a) (1977) (now codified at 30 C.F.R. § 723.17(a) (1982)). In this case, as we have previously noted, an informal review was held on July 8, 1980, after which the Notice of Violation was confirmed.

An operator may also ask for a formal public hearing before an administrative law judge without prepayment. 30 U.S.C. § 1275(a) (Supp. II 1978). At such a hearing, the burden of showing a prima facie case would be on the OSM, but the ultimate burden of persuasion is placed on the operator.[4] 42 C.F.R. § 4.1171 (1982). An operator may also request temporary relief from

an administrative law judge pending a formal hearing.

A Cessation Order is issued whenever the inspector deems there to be an imminent danger to public safety or risk of environmental harm, or when the mine operator has not abated a violation described in a Notice of Violation within the time allotted. After the Cessation Order is served, the operator is also entitled to a formal review hearing before an administrative law judge.[5] Provision is made in the regulations for an informal review of a Cessation Order within thirty days of issuance. 30 C.F.R. § 722.15 (1982).[6]

After the operator has been served with a Notice of Proposed Penalty Assessment, he is entitled to an informal assessment review conference. Up to this point, all review procedures are available to an operator without prepayment of the penalty. If, after an informal assessment review conference, the operator wishes to appeal the matter further before an administrative law judge, then, and only then, must the amount of the proposed fine be paid into an escrow account before a further challenge to the violation or the amount of the penalty may be entertained. If the operator does not forward the amount within thirty days of the Notice of Proposed Assessment, all rights to contest the violation or the amount of the penalty are waived.

In this case, Graham sought and was afforded an informal assessment conference at which time the penalty was upheld. Although he then sought formal review of the penalty, his appeal was dismissed because the $22,500.00 fine had not been escrowed.

### III.

We now turn to consideration of the constitutionality of 30 U.S.C. § 1268(c). Al-

---

tion, whether Graham had actually paid the money into escrow, was undisputed.

4. This provision is in contrast to that which would apply had Graham paid the penalty *before* the hearing, in which case the burden of persuasion would rest on the OSM. 43 C.F.R. 4.1155 (1982).

5. If, however, the operator had already contested the order in a previous formal hearing, then he cannot reassert his objection again. 30 C.F.R. § 723.19(a) (1982).

6. In this case, the Government's brief asserts that Graham never requested a formal or informal review of the Cessation Order. Brief of OSM at 9.

though this Court has not previously passed on this issue, we note that two other courts of appeals and six district courts have upheld this statute against due process challenges. *Blackhawk Mining Co. v. Andrus,* 711 F.2d 753 (6th Cir.1983); *B & M Coal Corp. v. Office of Surface Mining Reclamation and Enforcement,* 699 F.2d 381 (7th Cir.1983), *affirming* 531 F.Supp. 677 (S.D. Ind.1982); *United States v. Crooksville Coal Co.,* 560 F.Supp. 141 (S.D.Ohio 1982); *John Walters Coal Co. v. Watt,* 553 F.Supp. 838 (E.D.Ky.1982); *United States v. Log Mountain Mining Co.,* 550 F.Supp. 811 (E.D.Tenn. 1982); *United States v. Hill,* 533 F.Supp. 810 (E.D.Tenn.1982); *United States v. Thompson Brothers Coal Co.,* 532 F.Supp. 979 (W.D.Pa.), *rev'd on other grounds,* 696 F.2d 985 (3d Cir.1982). *Contra, Virginia Surface Mining & Reclamation Association v. Andrus,* 483 F.Supp. 425 (W.D.Va.1980) (§ 1268(c) unconstitutional), *rev'd on other grounds,* 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981).

## A.

■ We find, as has every other court which has considered this question, that the review procedures which were available to Graham *without* prepayment of the proposed penalty are more than sufficient to comply with due process requirements as set forth in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).[7] In *Mathews,* the Court announced the criteria for judging whether procedural protections available prior to deprivation of benefits or property were constitutionally sufficient. The adequacy of the administrative procedures provided depends on consideration of several factors: (1) the private interest which will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of any additional or substitute safeguards, and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews,* 424 U.S. at 334–35, 96 S.Ct. at 902–03.

Applying the *Mathews* standards, other courts have found, and we agree, that the administrative and statutory procedures within the OSM which are available to operators such as Graham are sufficient to provide them with a meaningful opportunity to be heard, and therefore are constitutionally valid. *E.g., Blackhawk Mining,* 711 F.2d at 757–58; *B & M Coal,* 699 F.2d at 384–86.

First, we find that the private interest involved, although palpable, is not overriding. The statute would act to deprive Graham of the use of money prepaid into escrow while appeal procedures were pending. This money would be returned with interest if Graham were successful in reversing the assessment. Nor is this a case in which the Government seeks to deprive Graham of funds earmarked for life's necessities. *Cf. Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (pretermination evidentiary hearing must be held when State seeks to deprive claimant of welfare sustenance payments).

Second, the risk of erroneous deprivation is also slight, given the panoply of evidentiary hearings and review conferences to which Graham was entitled without prepayment of the penalty. The value of compounding additional layers of review upon these procedural safeguards is therefore somewhat limited.

Finally, the government has a substantial interest in prompt assessment and collection of penalties as part of its objective to insure compliance with the Act. The prepayment requirement avoids the problem of non-collection of fines and discourages delays in payment due to frivolous appeals. *See* S.Rep. No. 95–128, 95th Cong., 1st Sess. 58–59 (1977).

The basic foundation of procedural due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo,* 380 U.S. 545,

---

7. *Blackhawk Mining Co.,* 711 F.2d 753, sets forth a detailed analysis under *Mathews v. Eldridge,* and concludes that 30 U.S.C. § 1268(c) meets all constitutional standards.

552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). It is therefore manifest to us that any deprivation of the use of money paid into escrow would not offend due process, given the extensive remedies made available to Graham by the various statutory provisions.

## B.

■ Graham contends, however, that he cannot afford to prepay the $22,500.00 penalty into escrow, and therefore the effect of Section 1268(c) is to deny him any further appellate review on the merits of his claim, not only before tribunals within the OSM, but also before the courts. Assuming the truth of Graham's factual allegations of indigency, a situation is presented arguably different from that found in the cases previously cited. There, the courts considered only the constitutional ramifications of temporary deprivation of any monies which was actually prepaid into escrow. We agree that the functional result may be to foreclose Graham from access to court review,[8] but we cannot agree that this result is constitutionally impermissible.

The Supreme Court has considered several times the constitutional implications of monetary prerequisites to court access. See *Ortwein v. Schwab*, 410 U.S. 656, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973) (per curiam) (government may constitutionally require $25.00 filing fee as condition to judicial review of denial of welfare benefits); *United States v. Kras*, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973) (government may constitutionally require $50.00 filing fee as prerequisite to discharge in bankruptcy); *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) (State may not require filing fee to gain access to courts in matrimonial action); *see also Little v. Streater*, 452 U.S. 1, 101 S.Ct. 2202, 68 L.Ed.2d 627 (1981) (State may not require indigent party to pay for blood tests in paternity proceeding).

■ The teaching of the foregoing cases is that monetary conditions to court access are permissible unless (1) the right sought to be enforced through the courts is fundamental, and (2) the courts provide the sole means of vindicating that right. *See, e.g., Ortwein*, 410 U.S. at 658–59, 93 S.Ct. at 1173–74; *see generally* Note, *Due Process, Court Access Fees, and the Right to Litigate*, 57 N.Y.U.L.Rev. 768, 770 (1982).

■ The right which Graham seeks to vindicate on this appeal is merely a pecuniary one. He desires that the imposition of the penalty be vacated, and presumably[9] that he be given permission to resume his coal mining operation. Such interests are purely economic in character and cannot be deemed fundamental. *See Ortwein*, 410 U.S. 656, 93 S.Ct. 1172, 35 L.Ed.2d 572 (interest in welfare payments not fundamental); *Kras*, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (interest in bankruptcy discharge not fundamental); *cf. Little*, 452 U.S. 1, 101 S.Ct. 2202, 68 L.Ed.2d 627 (parental status is fundamental interest); *Boddie*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (marital status is fundamental interest).

Moreover, Graham had access to "alternatives, [administrative remedies] not conditioned on the payment of the fees, to the judicial remedy." *Ortwein*, 410 U.S. at 659, 93 S.Ct. at 1174 (*quoting Kras*, 409 U.S. at 446, 93 S.Ct. at 638). The access to the

---

**8.** The district court found that the judicially created doctrine requiring exhaustion of administrative remedies precluded review by the courts of the merits of Graham's appeal. App. at 62–63. *See also Republic Industries Inc. v. Central Pa. Teamsters Pension Fund*, 693 F.2d 290 (3d Cir.1982). We prefer to reach the same result using the words of the statute itself. Section 1268(c) provides for the "waiver of *all legal rights* to contest the violation or the amount of the penalty" upon failure to prepay the penalty into escrow (emphasis added). *See supra* note 1. From this expansive language, it is clear to us that Congress intended that this waiver include rights raised in the courts as well as during the OSM appeal procedures.

**9.** This case arose not because Graham appealed from the original Cessation Order, but rather only after the Notice of Proposed Penalty Assessment was served more than one year later. It is unclear on this record if Graham sought to have the Cessation Order lifted. Whether or not Graham seeks to resume operations is not relevant to this analysis, however, since in either case the interest sought to be vindicated is in essence pecuniary.

courts which Graham seeks is therefore not the only alternative by which he could defend his rights. As the *Ortwein* Court noted in discussing filing fees as a condition to an appeal from deprivation of welfare benefits:

The Court has held that procedural due process requires that a welfare recipient be given a pretermination evidentiary hearing. These appellants have had hearings. The hearings provide a procedure, not conditioned on the payment of any fee, through which appellants have been able to seek redress. This Court has long recognized that, even in criminal cases, due process does not require a State to provide an appellate system.

*Id.* 410 U.S. at 659–60, 93 S.Ct. at 1174 (footnotes and citations omitted). Graham also fails, therefore, to satisfy the second prong of the test that the courts be his sole avenue of redress. Like the claimants in *Ortwein,* he has already had access to administrative remedies as an alternative to the courts. Due process requires no more.[10] *See McKane v. Durston,* 153 U.S. 684, 687–88, 14 S.Ct. 913, 914–15, 38 L.Ed. 867 (1894) (criminal defendant has no constitutional right to an appellate system).[11]

### C.

■ We may also quickly dispose of Graham's challenge to the statute based on the equal protection clause.[12] Graham essentially raises two equal protection objections to the escrow deposit provision. First, he complains that the operator who can afford to prepay the penalty has the benefit of the more favorable burden of persuasion (the burden of persuasion rests on OSM in such a case, *see supra* note 4) than the operator who must confine himself to "free" administrative review where he has the burden of persuasion. Merely because the burden of persuasion may be allocated differently depending upon the particular proceeding involved, however, does not mandate a finding of unconstitutionality. *See Dower v. Boslow,* 539 F.2d 969 (4th Cir.1976). For legislation of an economic nature, such as the legislation with which we deal here, the test is whether there is a rational justification for the particular classification.

■ The second objection made by Graham is to the effect that the prepayment provision discriminates against companies such as Graham which do not have sufficient funds to prepay the proposed penalty. Here too, the Government need only show a rational basis for a statutory classification to satisfy equal protection. It is only where a suspect classification or a fundamental interest is implicated that strict scrutiny is required. Wealth in itself, however, has never been held to be a suspect classifica-

**10.** Graham calls our attention to a regulation proposed by OSM which, if promulgated, would waive the prepayment requirement in situations where the mine operator was impecunious. 46 Fed.Reg. 58,468–69 (1981). That regulation, proposed in 1981, has yet to be enacted.

**11.** The Supreme Court has held, however, that, in the context of *criminal* appeals, when an appellate system is provided, it must be available to rich and poor alike. In *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), the Court ordered the state to pay for transcripts of trial proceedings for purposes of appellate review. It found that the right to appeal from a criminal conviction had become so ingrained in the judicial system that it could not be denied on account of indigency. *See also Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) (State must provide counsel in criminal appeals.)

The *Griffin* rationale, however, has never been extended beyond the area of criminal appeals. *See* L. Tribe, *American Constitutional*

*Law,* § 16–41, p. 1109 & n. 2 (1978); Note, *Due Process, Court Access Fees, and the Right to Litigate,* 57 N.Y.U.L..Rev. 768 (1982). Indeed, the clear implication of *Ortwein* is that *Griffin* is not applicable to civil cases. The OSM penalty being a *civil* assessment, 30 U.S.C. § 1268(a), *Griffin* is therefore inapplicable.

**12.** The OSM charged that Graham did not adequately raise this argument in the district court and that therefore it is improper for him to make this assertion for the first time on appeal. *See Leizerowski v. Eastern Freightways, Inc.,* 514 F.2d 487, 491 (3d Cir.1975). Without deciding the issue of whether the mere assertion of an equal protection argument in the petition for review before the district court is sufficient without more for purposes of our review, we observe that the district court in its opinion, while not addressing an equal protection analysis, at least mentioned the fact that Graham claimed an equal protection violation.

**1114**

tion. *E.g. San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 28–29, 93 S.Ct. 1278, 1293–95, 36 L.Ed.2d 16 (1973), and Graham's interest in this case, as we have previously noted, is merely pecuniary and involves no fundamental right.

We conclude, therefore, that Congress may rationally decide to require mine operators to prepay the penalty to insure collection and encourage compliance with the Act. Thus, we find no fault with the statute on equal protection grounds.

### IV.

Even considering the arguments made by Graham, we hold, as did the district court, that 30 U.S.C. § 1268(c) does not suffer from any constitutional deficiency. Accordingly, the order of the district court dated December 12, 1982 granting judgment in favor of OSM will be affirmed.