646 A.2d 447

PAUL ST. JAMES; A.P. DEVELOPMENT CORPORATION; AND STONEY FIELDS ESTATES MOBILE HOME PARK, PLAINTIFFS-APPELLANTS, v. DEPARTMENT OF ENVIRONMENTAL PROTECTION AND ENERGY, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued June 8, 1994—Decided July 14, 1994.

Before Judges KING, ARNOLD M. STEIN and RODRÍGUEZ.

*Christopher J. Hanlon* argued the cause for appellants (*Gross, Hanlon, Truss & Messer, P.C.*, attorneys, *Mr. Hanlon* and *Kenneth W. Biedzynski* on the brief, *Mr. Biedzynski* on the supplemental letter brief).

*Susan Savoca*, Deputy Attorney General, argued the cause for respondent (*Deborah T. Poritz*, Attorney General, attorney, *Mary C. Jacobson*, Assistant Attorney General, of counsel, *Ms. Savoca* and *Sushila Nanda*, Deputy Attorney General, on the brief, *Ms. Savoca* on the supplemental letter brief).

The opinion of the court was delivered by

ARNOLD M. STEIN, J.A.D.

The Department of Environmental Protection and Energy issued an order determining that appellants were water polluters and imposing a $6,750 penalty. The appellants requested a formal hearing. The DEPE refused to grant a hearing unless appellants first posted the proposed penalty amount in the form of a surety bond, irrevocable letter of credit or trust agreement or some other form of financial assurance approved by the agency. We granted leave to appeal from the refusal.

We reverse. A requirement for deposit of the proposed penalty as a precondition to a hearing satisfies due process only if there is some interim review procedure available to the putative violator between the agency's issuance of a notice of proposed penalty assessment and its final order of disposition. The present statutory and regulatory scheme provides no such hearing to persons determined by the DEPE to violate the provisions of the Water Pollution Control Act, *N.J.S.A.* 58:10A–1 to –60.

Appellants own and operate an eighty-nine-unit mobile home park in Egg Harbor Township. The park is serviced by a "community on-site subsurface sewage disposal system." They hold a New Jersey Pollutant Discharge Elimination System permit which allows them to discharge a volume of 26,700 gallons per day of treated domestic waste water into the state ground waters by means of four subsurface disposal beds.

On various dates between May and July 1993, a representative of the Atlantic County Health Department inspected appellants' property and observed the illegal discharge of sewage from the system onto land which may flow or drain into state waters. Notices of the violations were issued by the health department to appellants on May 27, June 10 and July 22, 1993. Samples collected on June 7 and July 20, 1993, indicated the presence of fecal coliform, defined as a pollutant by *N.J.A.C.* 7:14A–1.9. The condition was later abated.

Several months later, on January 7, 1994, the DEPE issued an Administrative Order and Notice of Civil Administrative Penalty Assessment for the discharge of the pollutants on June 7 and July 20, 1993. This was the first formal notification that appellants received from the DEPE. The order required that appellants immediately cease all unpermitted discharges of pollutants. The DEPE also gave notice that it had "determined that a civil administrative penalty should be assessed ... in the amount of $6,750.00." Appellants demanded a hearing but refused to post the financial assurance for the assessed penalty demanded by the Department. The Department refused to conduct the hearing.

The authority for posting financial assurance in the penalty amount as a condition precedent to a hearing comes from *N.J.S.A.* 58:10A–10d(5) of the Water Pollution Control Act:

A person, other than a local agency, appealing a penalty assessed against that person ... shall, as a condition of filing the appeal, post with the commissioner a refundable bond, or other security approved by the commissioner, in the amount of the civil administrative penalty assessed.

[*N.J.S.A.* 58:10A–10d(5).]

The penalty imposed pursuant to a final order is considered a debt of the violator and may be docketed with the clerk of the Superior Court as a judgment. A lien attaches to the real property of the violator unless he or she "posts a refundable bond or other security with the commissioner pursuant to an appeal of a final order to the Appellate Division of the Superior Court." *N.J.S.A.* 58:10A–10d(6)(b).

*N.J.A.C.* 7:14–8.4(a)9i, the regulation implementing the statute, requires that a person requesting a formal hearing to contest the order post "financial assurance in the full amount of the civil administrative penalty ... in the form of a surety bond guaranteeing payment, an irrevocable letter of credit or a fully funded trust ... or in another form the Department individually approves in writing."

In *Mathews v. Eldridge*, 424 *U.S.* 319, 96 *S.Ct.* 893, 47 *L.Ed.*2d 18 (1976), the United States Supreme Court enunciated a test to determine whether an administrative procedure satisfied due process requirements:

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
>
> [424 *U.S.* at 335, 96 *S.Ct.* at 903, 47 *L.Ed.*2d at 33.]

There is language in *In re Kimber Petroleum Corp.*, 110 *N.J.* 69, 539 *A.*2d 1181 (1988), *appeal dismissed*, 488 *U.S.* 935, 109 *S.Ct.* 358, 102 *L.Ed.*2d 349 (1988), which suggests that a financial security pre-posting requirement to obtain a formal hearing can satisfy due process:

> The Supreme Court has held that it is sufficient for the due process guarantee of the federal constitution that there be *some* forum where an order's validity can be challenged without penalty; it need not be the same forum where enforcement actions are prosecuted and the challenge need not be pre-payment. *Yakus v. United States,* 321 *U.S.* 414, 64 *S.Ct.* 660, 88 *L.Ed.* 834 (1944). Under this analysis,

the pre-adjudication payment of actual costs under the statute with the opportunity later to contest the legality or reasonableness of such costs without further penalty could be viewed as satisfying essential due process concerns.

[*Id.* at 79, 539 *A*.2d 1181 (footnote omitted).]

Federal decisions have almost uniformly upheld as satisfying due process the provisions in the Service Mining Control and Reclamation Act of 1977, 30 *U.S.C.A.* § 1201 to § 1328, requiring that a mine operator against whom a penalty has been assessed prepay the proposed penalty in escrow as a prerequisite to obtaining a formal hearing. 30 *U.S.C.A.* § 1268(c); *see, e.g., Graham v. Office of Surface Mining Reclam. and Enforc.,* 722 *F*.2d 1106, 1109–13 (3d Cir.1983); *Blackhawk Mining Co. v. Andrus,* 711 *F*.2d 753, 757–58 (6th Cir.1983); *B & M Coal Corp. v. Office of Surface Mining Reclam. and Enforc.,* 699 *F*.2d 381, 384– 86 (7th Cir.1983); Donald Paul Duffala, Annotation, *Penalties under 30 U.S.C.S. § 1268 for violating Surface Mining Control and Reclamation Act,* 82 *A.L.R.Fed.* 218, 223–28 (1987).

In *Graham,* the Third Circuit held that the review procedures available to mine operators without prepayment of the proposed penalty were more than sufficient to comply with the due process requirements set forth in *Mathews v. Eldridge, supra,* 722 *F*.2d at 1111. The court pointed out that the Act contains a detailed statutory and administrative scheme of procedural safeguards available to the mine operators to assure them a meaningful opportunity to be heard:

The various provisions concerning review of OSM decisions are somewhat complex. There are three stages in the process: (1) the Notice of Violation, (2) the Cessation Order, and (3) the Proposed Assessment of the Penalty.

The Notice of Violation, listing an operator's appeal rights, is issued by an OSM inspector on the site of the mine when he deems there to be a violation of statute but when there is no imminent danger to the public safety nor risk of environmental harm. 30 U.S.C. § 1271(a)(3) (Supp. II 1978). Upon receipt of the Notice, the mine operator may submit written information about the violation to the OSM and to the inspector who issued the Notice, which information must be considered in determining the amount of the penalty assessment. 30 C.F.R. § 723.16(a) (1977) (now codified at 30 C.F.R. § 723.17(a) (1982). In this case, as we have previously noted, an informal review was held on July 8, 1980, after which the Notice of Violation was confirmed.

An operator may also ask for a formal public hearing before an administrative law judge without prepayment. 30 U.S.C. § 1275(a) (Supp. II 1978). At such a hearing, the burden of showing a prima facie case would be on the OSM, but the ultimate burden of persuasion is placed on the operator. 42 C.F.R. § 4.1171 (1982). An operator may also request temporary relief from an administrative law judge pending a formal hearing.

A Cessation Order is issued whenever the inspector deems there to be an imminent danger to public safety or risk of environmental harm, or when the mine operator has not abated a violation described in a Notice of Violation within the time allotted. After the Cessation Order is served, the operator is also entitled to a formal review hearing before an administrative law judge. Provision is made in the regulations for an informal review of a Cessation Order within thirty days of issuance. 30 C.F.R. § 722.15 (1982).

After the operator has been served with a Notice of Proposed Penalty Assessment, he is entitled to an informal assessment review conference. Up to this point, all review procedures are available to an operator without prepayment of the penalty. If, after an informal assessment review conference, the operator wishes to appeal the matter further before an administrative law judge, then, and only then, must the amount of the proposed fine be paid·into an escrow account before a further challenge to the violation or the amount of the penalty may be entertained. If the operator does not forward the amount within thirty days of the Notice of Proposed Assessment, all rights to contest the violation or the amount of the penalty are waived.

[*Id.* at 1110 (footnotes omitted).]

In *Boyle Land and Fuel Co. v. Environmental Hearing Bd.*, 82 *Pa.Cmwlth.* 452, 475 *A.*2d 928 (1984), *aff'd*, 507 *Pa.* 135, 488 *A.*2d 1109 (1985), the court upheld as constitutional provisions in two separate statutes requiring persons who wish to appeal the assessment of a civil penalty by Pennsylvania's Department of Environmental Resources (DER) to make an advance deposit of the penalty in escrow. The court noted:

The objective of the [legislation] is to promote the public interest by protecting our environment. The assessment of civil penalties is one way of achieving that objective. It is in the public interest that DER's efforts in enforcing the law should not be frustrated by appeals which, although constitutionally permitted, may be taken solely for the purpose of delay while the violations continue. The bond requirement ensures the underlying validity of appeals and serves to protect the public interest in a safe and clean environment.

[*Id.* at 930.]

The court specifically held that the escrow requirement, as implemented by DER's regulations, afforded petitioner with due

process of law because the Pennsylvania law provided that the DER "may upon its own motion, or shall upon written request of the person to whom the assessment was issued, arrange for a conference to review the assessment." *Ibid.*

A provision requiring the posting of financial security in the amount of the proposed penalty in advance does not satisfy due process unless there is some interim procedure offering the putative violator an opportunity to be heard without posting security after he or she has received notice of the violation and before assessment of a final order and issuance of the penalty. *See Graham, supra,* 722 *F.*2d at 1111. There is no such provision in the statutory or administrative regulatory scheme for enforcement of the Water Pollution Control Act. As presently implemented by *N.J.A.C.* 7:14–8.4(a)9, that provision of *N.J.S.A.* 58:10A–10d(5) which requires posting of financial assurance for payment of the penalty as a condition to obtaining a hearing, is unconstitutional. It does not satisfy the minimum due process requirements set forth in *Mathews v. Eldridge, supra,* 424 *U.S.* at 335, 96 *S.Ct.* at 903, 47 *L.Ed.*2d at 33. Putative violators of the Act are not afforded the essential components of due process: adequate notice, an opportunity for a fair hearing and the availability of appropriate review. *Department of Envtl. Protection v. Larchmont Farms, Inc.,* 266 *N.J.Super.* 16, 27, 628 *A.*2d 761 (App.Div.1993), *certif. denied,* 135 *N.J.* 302, 639 *A.*2d 301 (1994); *see also Armstrong v. Manzo,* 380 *U.S.* 545, 552, 85 *S.Ct.* 1187, 1191, 14 *L.Ed.*2d 62, 66 (1965) (the basic foundation of procedural due process is the opportunity to be heard "at a meaningful time and in a meaningful manner"). As we noted in another context: "The focus ... is not so much upon requiring the alleged polluter to await an enforcement proceeding as it is upon finding a way to assure that due process will precede an order for liability." *Avon Prods., Inc. v. Department of Envtl. Protection,* 243 *N.J.Super.* 375, 380, 579 *A.*2d 831 (App.Div.1990).

The DEPE argues in its brief that

it is DEPE's policy in enforcement cases arising under the WPCA to provide an opportunity for an informal conference with the Department where the alleged violators and/or their attorneys can present arguments and evidence which he/she would like to be taken into account in order to reduce the penalty or even resolve the entire matter.

The problem is that this "informal conference" procedure is not embodied in the Act's statutory or regulatory scheme. We do not know whether such conferences are held because they are invited by the agency or because they are requested by the alleged violator. The failure to codify a conference procedure can only lead to a haphazard application. Appellants were never invited by the agency to participate in such a conference. There is not only the danger but the actuality of uneven implementation of the conference mechanism.

We cannot use judicial surgery to free the financial assurance provision of the Water Pollution Control Act, as presently implemented, from constitutional defect. *See In re Kimber Petroleum Corp., supra,* 110 *N.J.* at 83, 539 *A.*2d 1181 (1988) (quoting *Chamber of Commerce v. Election Law Enforcement Comm'n,* 82 *N.J.* 57, 75, 411 *A.*2d 168 (1980)) ("a court has the power to engage in 'judicial surgery' ... of a statute to free it from constitutional doubt or defect"). The present statute and regulation are not susceptible of salvage by some minor scalpel work. We will not graft a whole regulatory section into the statute to permit its application in a constitutionally acceptable manner. It is not the function of the court to legislate. It is the court's duty to interpret, and in so doing, to give effect to the language employed by the legislative body in order to properly effectuate the legislative design. *Wormack v. Howard,* 33 *N.J.* 139, 142–43, 162 *A.*2d 846 (1960); *Dixon v. Gassert,* 26 *N.J.* 1, 9, 138 *A.*2d 14 (1958); *In re Sussex County Mun. Utils. Auth.,* 198 *N.J.Super.* 214, 218–19, 486 *A.*2d 932 (App.Div.), *certif. denied,* 101 *N.J.* 267, 501 *A.*2d 934 (1985). When construing a statute, the court should not write additional qualifications omitted by the Legislature. *Craster v. Newark Bd. of Comm'rs,* 9 *N.J.* 225, 230, 87 *A.*2d 721 (1952). As Justice Pashman pointed out in his

dissenting opinion in *Chamber of Commerce v. Election Law Enforce. Comm'n,* 82 *N.J.* 57, 411 *A.*2d 168 (1980):

> One of the key considerations is the extent to which the court must intervene to save a statute. Where the court can uphold the enactment by giving its language a narrow interpretation consistent with its purpose, judicial activism is more readily justified. Similarly, if the infirmity can be cured by merely excising a particular sentence or phrase, "judicial surgery" is more appropriate. However, where the necessary modification entails the addition of qualifying language, the court should be extremely reluctant to proceed, for there it usurps the legislative function.
> [*Id.* at 96, 411 *A.*2d 168 (Pashman, J. dissenting).]

We do not know whether the Legislature or rule makers would opt to save the prepayment provision by a more elaborate procedural scheme, such as that contained in the Surface Mining Control and Reclamation Act of 1977; by the informal conference procedure in the Pennsylvania statute referred to in *Boyle;* or by some other method somewhere between these two procedures. We take no position as to whether an informal conference would satisfy due process requirements. Pending implementation by statute or regulation of a procedure which satisfies due process, we hold as constitutionally impermissible that provision of *N.J.S.A.* 58:10A–10d(5) which requires posting of financial security as a prerequisite to obtaining a trial-type hearing at which the putative violator can contest the charges.

The DEPE might also consider promulgating a regulation which provides for waiver of advanced posting of the penalty in the event that the alleged offender does not have sufficient funds to prepay the proposed penalty. Because these appellants make no claim of indigency, we need not decide whether equal protection rights are implicated because the prepayment provision discriminates against those who do not have sufficient funds to post financial assurances. We caution, however, that New Jersey courts may take a different view than that enunciated in *Graham, supra,* which held that "Graham's interest in this case, as we have previously noted, is merely pecuniary and involves no fundamental right." 722 *F.*2d at 1114.

Reversed. The DEPE's Administrative Order and Notice of Civil Administrative Penalty Assessment is treated as a Notice of

Violation and Proposed Penalty Assessment. The requirement of prepayment of financial assurance in the amount of the penalty as a condition precedent to a formal hearing is stricken. Pending adoption of amendatory legislation or implementation of appropriate regulations, appellants and those similarly situated shall be entitled, without preliminary posting of security, to a formal hearing to contest the violation charges and proposed penalties.

Reversed and remanded to the Department of Environmental Protection and Energy for further proceedings consistent with this opinion. We do not retain jurisdiction.