243 N.J. Super. 375 (1990)
579 A.2d 831
AVON PRODUCTS, INC., PLAINTIFF-APPELLANT,
v.
NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 30, 1990.
Decided August 23, 1990.
*376 Before Judges ANTELL, BILDER and STEIN.
John H. Klock argued the cause for appellant (Crummy, Del Deo, Dolan, Griffinger & Vecchione, attorneys; John H. Klock, on the brief).
Carol A. Blasi, Deputy Attorney General, argued the cause for respondent (Robert J. Del Tufo, Attorney General of New Jersey, attorney; Carol A. Blasi, on the brief).
The opinion of the court was delivered by ANTELL, P.J.A.D.
*377 In December 1985 plaintiff contracted to sell its subsidiary, Mallinckrodt, Inc., together with a manufacturing plant at 11 William Street, Belleville, New Jersey, to International Minerals and Chemical Corporation ("IMC"). The transaction was subject to the terms of the New Jersey Environmental Cleanup Responsibility Act, N.J.S.A. 13:1K-6 ("ECRA"), the provisions of which we recently reviewed in Chemos Corp. v. State DEP, 237 N.J. Super. 359, 568 A.2d 75 (App.Div. 1989). Plaintiff began the ECRA process on December 27, 1985, by submitting the General Information Submission to the Department of Environmental Protection (DEP) required by N.J.A.C. 7:26B-3.2. On January 21, 1986, it submitted its Site Evaluation Submission and Sampling and Analysis Plan. Both submissions were found incomplete by DEP and by letter of January 30, 1986, plaintiff requested DEP to prepare an Administrative Consent Order ("ACO") which would authorize plaintiff to close its transaction with IMC on February 23, 1986, prior to the completion of all ECRA requirements. The procedure is authorized by N.J.A.C. 7:26B-5.1(c), -7.1.
The ACO obliges plaintiff to submit a cleanup plan which addresses remediation of any contamination on the site and to "implement any NJDEP approved Cleanup Plan in accordance with the approved time schedule." The order also provides that plaintiff financially secure its obligations by posting a surety bond or letter of credit for $1,500,000.00 prior to execution of the ACO, and also establish a standby trust fund with the understanding that DEP would be permitted to draw upon the financial assurance should Avon fail to comply with the ACO or other ECRA requirements. The ACO also provides for penalties in the event of non-compliance.
The William Street facility had been used as a chemical plant since the early 1940s. It was occupied by Van Dyk and Co. ("Van Dyk") until that company was acquired by plaintiff in 1982. During its occupancy Van Dyk utilized in the operation *378 of its heat transfer system polychlorinated biphenyls (PCBs), a product which has been recognized by DEP and the United States Environmental Protection Agency (EPA) as a probable human carcinogen. The Site Evaluation Submission herein showed extensive PCB contamination caused by leaks in the transfer system.
This appeal focuses upon the parties' dispute as to the cleanup standard to which plaintiff may be held under the circumstances presented. In its final determination expressed in letters dated July 6, 1988, and August 17, 1988, from which this appeal is taken, DEP required that the cleanup levels for PCBs be fixed at 100 micrograms per square meter for high skin contact impervious surfaces and 250 micrograms per square meter for low skin contact impervious surfaces. A microgram is one millionth of a gram. By high contact surfaces DEP intends to include walls, floors, desks, chairs, tables, manned machinery and control panels. Low contact surfaces extend to ceilings and barrel roofs. Pointing out that the EPA has set a standard of 1000 micrograms per square meter for high contact and 10,000 for low contact areas, plaintiff maintains that it is entitled to either a negative declaration certifying that there are no hazardous wastes at the site, N.J.S.A. 13:1K-8g, or a much lower cleanup standard which more realistically relates to the goals and standards of ECRA legislation.[1] It contends that DEP's standards are arbitrary, lack support in the record and are invalid for failure to have been promulgated by rule pursuant to the Administrative Procedure Act, N.J.S.A. 52:14B-1 et seq. ("APA"), as required by ECRA, N.J.S.A. 13:1K-10, and for failure to accord plaintiff a hearing.
We first dispose of DEP's objection to this appeal which is made on the ground that plaintiff must first await an enforcement *379 proceeding before seeking review of cleanup plan standards, relying on Matter of Kimber Petroleum Corp., 110 N.J. 69, 539 A.2d 1181 (1988), app. dism. sub nom; Kimber Petroleum Corp. v. Daggett, 488 U.S. 935, 109 S.Ct. 358, 102 L.Ed.2d 349 (1988). The contention has merit with respect to plaintiff's request that we find DEP's approved cleanup plan standards arbitrary and capricious. Without an adversarial record there is no basis for judicial review to determine whether standards governing administrative action have been breached. But as matters now stand plaintiff has no assurance of a pre-cleanup enforcement proceeding from which there can be any meaningful review. Plaintiff has already deposited its $1,500,000.00 letter of credit and established a standby trust fund. With these financial assurances intact DEP is free to proceed with its own cleanup and then, so long as proper notice has been given, "draw on the financial assurance provided" under paragraph 11D of the ACO. The relevance of Kimber is to be found not in its holding that judicial review is unavailable until an enforcement proceeding is brought, but in its larger concerns that due process values not be overlooked, even in environmental litigation. Its particular significance to this case is that plaintiff should be afforded an opportunity to be heard before the cleanup costs have been incurred.
In Kimber, supra, the Supreme Court considered a challenge to the constitutionality of the treble damages section of the Spill Compensation and Control Act, N.J.S.A. 58:10-23.11f(a), which imposed such liability upon any polluter which failed to comply with a DEP directive to remove a hazardous discharge. Because Kimber had allowed the contamination of existing groundwater, a DEP directive ordered it to pay $2.16 million to fund the construction of an alternate water supply. The Court found the statute constitutionally doubtful for failure to allow for a hearing in which the directive's validity could be disputed before imposition of penal liability. Rather than invalidate the Act, the Court read into it a provision for a hearing which would assure the alleged polluter an opportunity to show "an *380 objectively reasonable basis for believing that DEP's directive was either invalid or inapplicable to it, and that any decision by the DEP to seek treble damages in a recovery action be subject to judicial review as any other agency action." 110 N.J. at 83, 539 A.2d 1181. The focus of that decision is not so much upon requiring the alleged polluter to await an enforcement proceeding as it is upon finding a way to assure that due process will precede an order for liability.
While the ACO is a complicating feature in determining plaintiff's obligations, we disagree with DEP that it represents a relinquishment by plaintiff of its right to due process in the determination of its ECRA responsibilities. In fact, paragraph 14 of the ACO specifically reserves to plaintiff "its right to seek review of any enforcement action as provided by the Administrative Procedure Act, N.J.S.A. 52:14B-1 et seq." Although the term "enforcement action" is somewhat ambiguous, the presence of this provision in the ACO rebuts DEP's contention that plaintiff agreed to comply with whatever cleanup standards the agency chose.
Important to our determination that plaintiff must be accorded a court hearing before the validity of its cleanup criteria is finally determined is the failure of DEP to promulgate a regulation stating what the criteria shall be. ECRA requires that these be adopted by DEP in accordance with the Administrative Procedure Act. See, N.J.S.A. 13:1K-10. While it is true that the statute permits DEP to review cleanup plans on a "case-by-case" basis until minimum standards are adopted, the statute was enacted in 1983 and no regulation has yet been adopted. We commented upon this in Chemos v. State DEP, supra, noting that
[h]ad DEP promulgated standards for what is the acceptable level of the substances in question, based upon DEP's expertise respecting the nature of the substance and its potential to migrate in water or earth, both Chemos and DEP personnel would have better understood what independently verifiable facts met that standard. It also follows that each could more easily know when sampling plans would be required. There would be less opportunity for the *381 creation of a record supporting a claim of arbitrariness. [Emphasis supplied] [Chemos Corp. v. State DEP, 237 N.J. Super. at 370, 568 A.2d 75].
We also noted a published article dated March 30, 1989, in which a DEP representative "asserted that such regulations were being prepared." Id. at 370 fn. 16, 568 A.2d 75. At oral argument we were advised that the Department's present target date for announcement of a regulation is sometime in October or November of this year.
DEP's failure to promulgate the mandated regulation is clearly relevant. Plaintiff's letter application of January 30, 1986, requesting DEP to prepare an ACO was dispatched under compelling circumstances. As the letter explained, its anticipated closing date for the sale of Mallinckrodt was scheduled for February 23, 1986. The transaction appears to have entailed many complications, involving ten properties located in six different states, the Belleville site being the only one located in New Jersey, and it was clear that the ECRA clearances could not be obtained in so short a time. Facing an indefinite governmental delay in the processing of its ECRA submissions, plaintiff was understandably constrained to request the ACO. Nevertheless, had DEP adopted a regulation publishing the cleanup standards it would at least be in a position to charge plaintiff with knowledge thereof and insist that its approved cleanup plan be implemented. Absent such a regulation, plaintiff's informed consent to the now disputed cleanup standards does not appear, and we will not assume plaintiff's intent to waive its right to judicial protection from arbitrary administrative action in the determination of those standards.
Plaintiff also seeks relief from DEP's denial of plaintiff's request for a trial-type hearing. This procedural recourse was deemed necessary by plaintiff to compensate for the lack of a regulation. To this ground of appeal, DEP responds that plaintiff
[w]ill be given a hearing when the department takes enforcement action at which time a full record will be created and a final determination made; thus *382 the failure to grant an administrative hearing is proper and the doctrine of fundamental fairness satisfied.
The deficiency in DEP's response lies in its lack of clarity as to what is meant by an "enforcement action." The ACO permits DEP to implement the cleanup under its approved standards and then draw upon plaintiff's letter of credit without affording plaintiff an opportunity to demonstrate that DEP's cleanup standards are arbitrary, capricious and unreasonable. We conclude that the procedural framework of this matter should be clarified to safeguard plaintiff's due process interests compatibly with DEP's responsibility to compel adherence to the provisions of ECRA.
The determination under review set forth in the DEP letters of July 6, 1988, and August 17, 1988, is vacated to the extent that it establishes the cleanup standards for high and low skin contact impervious surfaces. DEP is enjoined from drawing upon plaintiff's financial security in the absence of a Superior Court order authorizing such action after a hearing in which plaintiff has had an opportunity to demonstrate DEP's approved cleanup criteria to be arbitrary, capricious and unreasonable. In the event that DEP does not act seasonably in bringing its enforcement action, plaintiff may apply to this court for the discharge of its security.
Reversed.
NOTES
[1] Assembly Bill, No. 59, which passed in the Assembly February 22, 1988, would require DEP to follow EPA standards pending the adoption of regulatory criteria. Chemos Corp. v. State DEP, 237 N.J. Super. at 370, 568 A.2d 75. The bill is still before the Senate Committee on Energy and Environment.