587 A.2d 657

STATE OF NEW JERSEY, DEPARTMENT OF ENVIRONMENTAL PROTECTION, PLAINTIFF–RESPONDENT, v. MOBIL OIL CORPORATION, DEFENDANT/THIRD PARTY PLAINTIFF–APPELLANT, v. CHRISTOPHER DAGGETT, THIRD–PARTY–DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued February 6, 1991—Decided March 5, 1991.

332

Before Judges KING, LONG and R.S. COHEN.

*Raymond M. Tierney*, Jr., argued the cause for appellant (*Shanley & Fisher*, attorneys; *Raymond M. Tierney* and *Richard A. Levao*, on the brief).

*John R. Renella*, Deputy Attorney General, argued the cause for respondent Department of Environmental Protection (*Rob-*

ert J. Del Tufo, Attorney General of New Jersey, attorney; *Mary C. Jacobson*, Deputy Attorney General, of counsel).

The opinion of the court was delivered by

KING, P.J.A.D.

This case concerns the right of an alleged polluter to a pre-enforcement challenge to the terms of an alleged administrative "consent" order before clean-up of a polluted site is undertaken. After hearing oral argument on the motion for leave to appeal by Mobil Oil Corporation (Mobil) on November 1, 1990, we granted a stay of any administrative action by the Department of Environmental Protection (DEP) pending our disposition of the matter.

On November 16, 1990 we granted leave to appeal from the order of the Law Division entered on October 30, 1990 denying Mobil's application for a restraining order against DEP. We ordered accelerated briefing and heard the matter on the merits on February 6, 1991. We now affirm Judge Francis' order denying mandatory injunctive relief to Mobil which had challenged the terms of the proposed Administrative Consent Order crafted by DEP to remedy an alleged Spill Act violation and the right of DEP to proceed itself to clean up the site.

DEP brought this suit seeking penalties under the Water Pollution Control Act (*N.J.S.A.* 58:10A–1 to –34), the Spill Compensation and Control Act, (*N.J.S.A.* 58:10–23.11 to –23.11z) and the Solid Waste Management Act (*N.J.S.A.* 13:1E–1 to –198). The action arose from the breakdown in negotiations over clean-up at Mobil's Paulsboro site. Mobil sought restraints against DEP's proceeding to start the clean-up pursuant to the Spill Act and requested a judicial declaration that certain terms of the order which DEP sought to impose on Mobil were illegal.

The dispute is a relatively narrow one arising under the "Spill Compensation and Control Act," *N.J.S.A.* 58:10–23.11 to –23.-11z. But the dispute seems to have serious implications to the

parties and has brought them to loggerheads in their pursuit of an appropriate remediation plan and clean-up of the soil pollution at Mobil refinery site in Paulsboro.

DEP has issued a directive pursuant to the Spill Act aimed towards the ultimate correction of soil pollution by petroleum by-products at the Paulsboro site. In attempted implementation of this directive, DEP has submitted a proposed administrative "consent" order (ACO) for Mobil's execution. The proposed ACO contains a schedule of "stipulated penalties" at clauses 53 and 54 which recites:

D. *Stipulated Penalties*

53. Mobil shall pay stipulated penalties to the Department for its failure to comply with any of the deadlines or schedules required by this Administrative Consent Order including those established and approved by the Department pursuant to this Administrative Consent Order. Each deadline or schedule not complied with shall be considered a separate violation. Payment of Stipulated Penalties shall be made according to the following schedule, unless the Department has modified the compliance date pursuant to the *force majeure* provisions hereinbelow:

| Calendar Days After Due Date | Stipulated Penalties |
|---|---|
| 1–7 | $ 500 per calendar day |
| 8–14 | $ 1,000 per calendar day |
| 15–21 | $ 3,000 per calendar day |
| 22–28 | $ 5,000 per calendar day |
| 29–over | $10,000 per calendar day |

54. Any such penalty shall be due and payable fourteen (14) calendar days following receipt of a written demand by the Department. Payment of such stipulated penalties shall be made by cashier's or certified check payable to the "Treasurer, State of New Jersey." Each payment of a stipulated penalty shall include a letter describing the basis for the penalty.

The ACO also contained this clause 63 concerning enforcement of the penalties:

63. Mobil agrees not to contest the authority or jurisdiction of the Department to issue this Administrative Consent order; Mobil further agrees not to contest the terms or conditions of this Administrative Consent Order, except as to interpretation or application of such terms and conditions in any action brought by the Department to enforce the provisions of this Administrative Consent Order. Provided however, Mobil expressly reserves the right, entirely at its own risk, not to comply with any direction or decision of the Department, and to defend itself in any action brought to enforce such direction or decision which Mobil believes is arbitrary, capricious or unreasonable. In any such

enforcement proceedings, Mobil shall have the burden of proof to establish that any direction or decision of the Department was arbitrary, capricious or unreasonable. In the event that NJDEP prevails in any such enforcement action, Mobil shall be liable for any stipulated penalties which accrued during the period of non-compliance. Should Mobil prevail in any such enforcement proceeding initiated by the Department, the Department agrees to refund any stipulated penalties paid by Mobil for the alleged violation which precipitated the initiation of the enforcement action. Similarly, in the event that Mobil prevails in any proceeding in which it is alleged that the Department acted arbitrarily, capriciously or unreasonably in exercising its right under Paragraph 47, above, to draw on the letter of credit, the Department agrees to refund, to the account of the letter of credit, the funds so drawn relative to that contested enforcement action. This provision shall not be construed to provide for reimbursement of the account of the letter of credit for monies drawn down for any activity other than that which is the subject of the contested enforcement proceeding in which Mobil prevails.

Under the proposed order, Mobil also would have been required to consent to enforcement of the ACO in Superior Court in a summary action (clause 76) and to waive its rights to any administrative hearing (clause 78). By letter of June 19, 1989 DEP offered this purported modification of paragraph 63:

Paragraph 63—Add before the word "Similarly" "Notwithstanding the above, Mobil reserves whatever rights it may have, if any, to raise additional defenses to the imposition of stipulated penalties. The Department and Mobil agree that this Administrative Consent Order does not create any such rights and shall not be deemed to waive any such rights if they exist."

These penalties are presumably to be imposed by edict if Mobil does not perform the clean-up appropriately. They should not be included in the ACO, says Mobil. Indeed, Mobil asserts that the insistent posture of DEP makes the proposed ACO a coercive order, not a consent order. This is especially true, says Mobil, because the DEP insists that once the ACO is executed any violation automatically triggers imposition of the "stipulated penalties" clause and Mobil has no so-called *Kimber* "good faith" defenses against imposition of the penalties in any subsequent enforcement proceeding. *Matter of Kimber Petroleum Corp.*, 110 *N.J.* 69, 539 *A.*2d 1181 (1988).

DEP importunes us that it must have this power to insist on an ACO with a stipulated penalties clause in order to effectively implement remediation and clean-up plans. Without this power,

and the clout of an ACO thus armed, DEP claims that alleged polluters tend to dally and become remiss in their clean-up tasks. Mobil certainly denies that it falls or will fall into this category of uncooperative remediators. Mobil claims that denying it due process rights to good faith defenses against these "stipulated penalties," which incidentally are dehors and beyond the standard treble damages under the Spill Act (*N.J.S.A.* 58:10–23.11f), is coercive, not consensual, and is unfair and unconstitutional.

As Judge Francis correctly perceived, the abstract right of DEP to compel execution of such a "consent" administrative order has not been condoned to date by any court. Indeed, a coercive order by definition cannot be a consent order. The judge refused to grant Mobil injunctive relief on the ground that the right to such relief is currently unsettled. The judge no doubt also entertained a genuine feeling that Mobil would not experience any irreparable harm in the long-run if injunctive relief currently was unavailable. Most significantly, Judge Francis also articulated his belief that intermediate procedural entanglements in judicial proceedings should be avoided and were inconsistent with the philosophy expressed by the Spill Act and *Kimber*, *i.e.*, that remediation and clean-up come first and that litigation must abide these priorities.

We see nothing in the Spill Act or its inferential penumbras which gives DEP the absolute power to impose an ACO with any terms it sees fit upon an alleged polluter, reserving *no* rights to the citizen to raise the ACO's fundamental unfairness in a later enforcement proceeding. We make this observation since DEP insists that it will press the position in future litigation that so-called *Kimber* defenses are just not available in this situation where a stipulated penalties clause in an ACO is invoked. We can see DEP's point that such a power would be useful and efficacious to enforce clean-ups. But we cannot concede such power to DEP under this legislative scheme, especially if the power is used arbitrarily and capriciously. The

need for quick enforcement must still acknowledge some rational respect for property rights. See *Kimber,* 110 *N.J.* 83–84, 539 *A.*2d 1181. "[I]n an appropriate case, an aggrieved party should have the right, in an action for reimbursement to recover costs, to demonstrate that an element of the costs imposed by DEP is unreasonable." *Id.* at 86, 539 *A.*2d 1181. The same applies to penalties under an ACO.

We do recognize that DEP has the right to confront the alleged polluter with Spill Act violations, propose remediation and clean-up, and then enter into a voluntary, consensual agreement to enable the alleged polluter to proceed with clean-up. If the alleged polluter is uncooperative and will not enter into a reasonable agreement, DEP can proceed under the Spill Act to arrange to cleanup the site, impose the treble-damage *Kimber* penalty, and any other penalties or compensation which the Spill Act authorizes.[1] "Whenever any hazardous substance is discharged, the department may, in its discretion, act to remove or arrange for the removal of such discharge or may direct the discharger to remove, or arrange for the removal of, such discharge." *N.J.S.A.* 58:10–23.11f. Mobil or any other alleged polluter then would have any defenses to such proceeding which the Act, *Kimber,* or their amendments, supplements and progeny allow. See 110 *N.J.* at 86, 539 *A.*2d 1181. As we stated in *Avon Products v. New Jersey DEP,* 243 *N.J. Super.* 375, 381, 579 *A.*2d 831 (App.Div.1990), "we will not assume [the alleged polluter's] intent to waive its right to judicial protection from arbitrary administrative action in the determination of those [cleanup] standards."

■ We conclude that Judge Francis' order must be affirmed. In effect, Mobil's application for preliminary injunctive relief invites the courts to become mediators, and ultimately arbitrators, in remediation and clean-up negotiations between

---

[1] *L.* 1990, c. 75, amending *N.J.S.A.* 58:10–23.11u, amended the Spill Act to enhance the penalty provisions effective July 21, 1990.

DEP and the regulated community. We do not perceive this as our role, anymore than we condone "consent" orders which are the product of coercion.[2] The parties are free to negotiate and agree to terms of any clean-up undertaking contemplated by the Spill Act. If they cannot agree DEP has ample powers under the Act to proceed—and the Act contains ample economic incentives to motivate compliance. We also conclude under *Kimber* that the alleged polluter ultimately will have ample due process protection, though of necessity delayed, but not diluted or denied altogether. We see no reason under the Spill Act, or under our general equity jurisdiction, to interpose ourselves at this point into this legislative scheme and the parties' preclean-up bargaining.

Affirmed; our stay is, of course, dissolved.

---

[2]At oral argument counsel for the DEP advised us that regulations will soon be promulgated by the Department on the subject of administrative consent orders under the Spill Act.